AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☒ SUPERSEDING

─── **OFFENSE CHARGED** ───

See attachment.

☐ Petty
☐ Minor
☐ Misde-
    meanor
☒ Felony

PENALTY:   See attachment.

─── Name of District Court, and/or Judge/Magistrate Location ───

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

**FILED**

─── **DEFENDANT - U.S** ───

► JEREMY JAMES LUCKETT

DISTRICT COURT NUMBER

CR 15-00266 HSG

AUG 1 1 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

─── **PROCEEDING** ───

Name of Complaintant Agency, or Person (& Title, if any)

Drug Enforcement Administration and IRS-CI

☐ person is awaiting trial in another Federal or State Court,
    give name of court

☐ this person/proceeding is transferred from another district
    per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of
    charges previously dismissed
    which were dismissed on motion
    of:
    ☐ U.S. ATTORNEY   ☐ DEFENSE

☐ this prosecution relates to a
    pending case involving this same
    defendant

☐ prior proceedings or appearance(s)
    before U.S. Magistrate regarding this
    defendant were recorded under

} SHOW
DOCKET NO.

} MAGISTRATE
CASE NO.

Name and Office of Person
Furnishing Information on this form   BRIAN J. STRETCH

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   GARTH HIRE, AUSA

─── **DEFENDANT** ───

**IS *NOT* IN CUSTODY**
    Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior
       summons was served on above charges ►

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☒ On this charge

5) ☐ On another conviction        } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
       If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes      } If "Yes"
been filed?   ☐ No        give date
                          filed

DATE OF      ►      Month/Day/Year
ARREST

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED   ►   Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

─── **ADDITIONAL INFORMATION OR COMMENTS** ───

PROCESS:
☐ SUMMONS   ☒ NO PROCESS*   ☐ WARRANT      Bail Amount:

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment

Date/Time:                        Before Judge:

Comments:

PENALTY SHEET
*UNITED STATES v. JEREMY JAMES LUCKETT, et al.*
CR 15-00266 HSG

| COUNT 1 – 18 U.S.C. § 371 | |
|---|---|
| Conspiracy to Enter an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>ANTHONY JEROME TURNER<br><br>JA'DEL RAYNARD McFIELD<br><br>KATRICE MARY ELLEN DAY<br><br>BRIANNA NICOLE HOLLOWAY<br><br>LAURA ELAINE TURNER<br><br>SHANTELL LATRICE DANIELS | Max. Prison Term:                          5 Years<br>Max. Supervised Release Term:   3 Years<br>Maximum Fine:                          $250,000<br>Special Assessment:                    $100 |

| COUNTS 2 THROUGH 34 – 49 U.S.C. §§ 46314(a), (b)(2) | |
|---|---|
| Entering an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT (All)<br>DAMIEN ZACKERY LEWIS (3 - 6, 22, 23, 25, 26, 28, 29, 34)<br>CHRISTOPHER MICHAEL CROSS (All)<br>ANTHONY JEROME TURNER (8, 11, 13, 16 - 18, 24, 27, 30 - 32)<br>JA'DEL RAYNARD McFIELD (33, 34)<br>KATRICE MARY ELLEN DAY (2 - 6, 9, 12)<br>BRIANNA NICOLE HOLLOWAY (33)<br>LAURA ELAINE TURNER (18, 30)<br>SHANTELL LATRICE DANIELS (16) | Max. Prison Term:                          10 Years<br>Max. Supervised Release Term:   3 Years<br>Maximum Fine:                          $250,000<br>Special Assessment:                    $100 |

| COUNT 35 – 21 U.S.C. §§ 846, 841(b)(1)(A), (b)(1)(B) ||
|---|---|
| Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine and Cocaine ||
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>JA'DEL RAYNARD McFIELD | Methamphetamine<br><br>Max. Prison Term: Life<br>Min. Prison Term: 10 Years<br>Max. Supervised Release Term: Life<br>Min. Supervised Release Term: 5 Years<br>Maximum Fine: $10,000,000<br>Special Assessment: $100<br><br>Cocaine<br><br>Max. Prison Term: 40 Years<br>Min. Prison Term: 5 Years<br>Max. Supervised Release Term: Life<br>Min. Supervised Release Term: 4 Years<br>Maximum Fine: $5,000,000<br>Special Assessment: $100 |

| COUNTS 36 AND 37 – 21 U.S.C. §§ 841(a)(1), (b)(1)(D) ||
|---|---|
| Distribution, and Possession With Intent to Distribute, Methamphetamine and Cocaine ||
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>JA'DEL RAYNARD McFIELD | Methamphetamine (Count 36)<br><br>Max. Prison Term: Life<br>Min. Prison Term: 10 Years<br>Max. Supervised Release Term: Life<br>Min. Supervised Release Term: 5 Years<br>Maximum Fine: $10,000,000<br>Special Assessment: $100<br><br>Cocaine (Count 37)<br><br>Max. Prison Term: 40 Years<br>Min. Prison Term: 5 Years<br>Max. Supervised Release Term: Life<br>Min. Supervised Release Term: 4 Years<br>Maximum Fine: $5,000,000<br>Special Assessment: $100 |

| COUNT 38 – 18 U.S.C. § 1956(a)(1)(A)(i) | |
|---|---|
| Money Laundering with Intent to Promote Narcotics Trafficking | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT | Max. Prison Term: 20 Years<br>Max. Supervised Release Term: 3 Years<br>Maximum Fine: $500,000<br>Special Assessment: $100 |

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☒ SUPERSEDING

─ **OFFENSE CHARGED** ─

See attachment.

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

~~SEALED~~
~~BY COURT ORDER~~

PENALTY:   See attachment.

─── Name of District Court, and/or Judge/Magistrate Location ───

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

FILED

┌─ **DEFENDANT - U.S** ─

▶ DAMIEN ZACKERY LEWIS

AUG 1 1 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

DISTRICT COURT NUMBER

CR 15-00266 HSG

─────── **PROCEEDING** ───────

Name of Complainant Agency, or Person (& Title, if any)

Drug Enforcement Administration and IRS-CI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY   ☐ DEFENSE
} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   BRIAN J. STRETCH

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   GARTH HIRE, AUSA

─────── **DEFENDANT** ───────

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☒ Is on Bail or Release from (show District)

Northern District of California

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction
☐ Federal   ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer   ☐ Yes   } If "Yes"
been filed?    ☐ No    } give date filed

**DATE OF ARREST**   Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY**   Month/Day/Year ▶

☐ This report amends AO 257 previously submitted

─────── **ADDITIONAL INFORMATION OR COMMENTS** ───────

PROCESS:
☐ SUMMONS   ☒ NO PROCESS*   ☐ WARRANT   Bail Amount:

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:          Before Judge:

Comments:

**PENALTY SHEET**
*UNITED STATES v. JEREMY JAMES LUCKETT, et al.*
**CR 15-00266 HSG**

| COUNT 1 – 18 U.S.C. § 371 | |
|---|---|
| Conspiracy to Enter an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>ANTHONY JEROME TURNER<br><br>JA'DEL RAYNARD McFIELD<br><br>KATRICE MARY ELLEN DAY<br><br>BRIANNA NICOLE HOLLOWAY<br><br>LAURA ELAINE TURNER<br><br>SHANTELL LATRICE DANIELS | Max. Prison Term:                         5 Years<br>Max. Supervised Release Term:    3 Years<br>Maximum Fine:                            $250,000<br>Special Assessment:                      $100 |

| COUNTS 2 THROUGH 34 – 49 U.S.C. §§ 46314(a), (b)(2) | |
|---|---|
| Entering an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT (All)<br><br>DAMIEN ZACKERY LEWIS (3 - 6, 22, 23, 25, 26, 28, 29, 34)<br><br>CHRISTOPHER MICHAEL CROSS (All)<br><br>ANTHONY JEROME TURNER (8, 11, 13, 16 - 18, 24, 27, 30 - 32)<br><br>JA'DEL RAYNARD McFIELD (33, 34)<br><br>KATRICE MARY ELLEN DAY (2 - 6, 9, 12)<br><br>BRIANNA NICOLE HOLLOWAY (33)<br><br>LAURA ELAINE TURNER (18, 30)<br><br>SHANTELL LATRICE DANIELS (16) | Max. Prison Term:                         10 Years<br>Max. Supervised Release Term:    3 Years<br>Maximum Fine:                            $250,000<br>Special Assessment:                      $100 |

| COUNT 35 – 21 U.S.C. §§ 846, 841(b)(1)(A), (b)(1)(B) | |
|---|---|
| Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine and Cocaine | |
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>JA'DEL RAYNARD McFIELD | Methamphetamine<br><br>Max. Prison Term: Life<br>Min. Prison Term: 10 Years<br>Max. Supervised Release Term: Life<br>Min. Supervised Release Term: 5 Years<br>Maximum Fine: $10,000,000<br>Special Assessment: $100<br><br>Cocaine<br><br>Max. Prison Term: 40 Years<br>Min. Prison Term: 5 Years<br>Max. Supervised Release Term: Life<br>Min. Supervised Release Term: 4 Years<br>Maximum Fine: $5,000,000<br>Special Assessment: $100 |

| COUNTS 36 AND 37 – 21 U.S.C. §§ 841(a)(1), (b)(1)(D) | |
|---|---|
| Distribution, and Possession With Intent to Distribute, Methamphetamine and Cocaine | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>JA'DEL RAYNARD McFIELD | Methamphetamine (Count 36)<br><br>Max. Prison Term: Life<br>Min. Prison Term: 10 Years<br>Max. Supervised Release Term: Life<br>Min. Supervised Release Term: 5 Years<br>Maximum Fine: $10,000,000<br>Special Assessment: $100<br><br>Cocaine (Count 37)<br><br>Max. Prison Term: 40 Years<br>Min. Prison Term: 5 Years<br>Max. Supervised Release Term: Life<br>Min. Supervised Release Term: 4 Years<br>Maximum Fine: $5,000,000<br>Special Assessment: $100 |

| COUNT 38 – 18 U.S.C. § 1956(a)(1)(A)(i) | |
| :---: | :---: |
| Money Laundering with Intent to Promote Narcotics Trafficking | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT | Max. Prison Term:              20 Years<br>Max. Supervised Release Term:  3 Years<br>Maximum Fine:                  $500,000<br>Special Assessment:            $100 |

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☒ SUPERSEDING

#### OFFENSE CHARGED

See attachment.

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

~~SEALED BY COURT ORDER~~

PENALTY:  See attachment.

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

#### DEFENDANT - U.S

▶ CHRISTOPHER MICHAEL CROSS

**FILED**

DISTRICT COURT NUMBER

CR 15-00266 HSG

AUG 1 1 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

#### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

Drug Enforcement Administration and IRS-CI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:  ☐ U.S. ATTORNEY  ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   BRIAN J. STRETCH

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   GARTH HIRE, AUSA

#### DEFENDANT

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☒ Is on Bail or Release from (show District)

Northern District of California

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges

☐ Federal  ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No

If "Yes" give date filed

DATE OF ARREST ▶

Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶

Month/Day/Year

☐ This report amends AO 257 previously submitted

#### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

Bail Amount:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:                    Before Judge:

Comments:

**PENALTY SHEET**

*UNITED STATES v. JEREMY JAMES LUCKETT, et al.*

**CR 15-00266 HSG**

| COUNT 1 – 18 U.S.C. § 371 | |
|---|---|
| Conspiracy to Enter an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br>DAMIEN ZACKERY LEWIS<br>CHRISTOPHER MICHAEL CROSS<br>ANTHONY JEROME TURNER<br>JA'DEL RAYNARD McFIELD<br>KATRICE MARY ELLEN DAY<br>BRIANNA NICOLE HOLLOWAY<br>LAURA ELAINE TURNER<br>SHANTELL LATRICE DANIELS | Max. Prison Term:               5 Years<br>Max. Supervised Release Term:   3 Years<br>Maximum Fine:                   $250,000<br>Special Assessment:             $100 |

| COUNTS 2 THROUGH 34 – 49 U.S.C. §§ 46314(a), (b)(2) | |
|---|---|
| Entering an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT (All)<br>DAMIEN ZACKERY LEWIS (3 - 6, 22, 23, 25, 26, 28, 29, 34)<br>CHRISTOPHER MICHAEL CROSS (All)<br>ANTHONY JEROME TURNER (8, 11, 13, 16 - 18, 24, 27, 30 - 32)<br>JA'DEL RAYNARD McFIELD (33, 34)<br>KATRICE MARY ELLEN DAY (2 - 6, 9, 12)<br>BRIANNA NICOLE HOLLOWAY (33)<br>LAURA ELAINE TURNER (18, 30)<br>SHANTELL LATRICE DANIELS (16) | Max. Prison Term:               10 Years<br>Max. Supervised Release Term:   3 Years<br>Maximum Fine:                   $250,000<br>Special Assessment:             $100 |

| COUNT 35 – 21 U.S.C. §§ 846, 841(b)(1)(A), (b)(1)(B) | |
|---|---|
| Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine and Cocaine | |
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>JA'DEL RAYNARD McFIELD | Methamphetamine<br><br>Max. Prison Term: Life<br>Min. Prison Term: 10 Years<br>Max. Supervised Release Term: Life<br>Min. Supervised Release Term: 5 Years<br>Maximum Fine: $10,000,000<br>Special Assessment: $100<br><br>Cocaine<br><br>Max. Prison Term: 40 Years<br>Min. Prison Term: 5 Years<br>Max. Supervised Release Term: Life<br>Min. Supervised Release Term: 4 Years<br>Maximum Fine: $5,000,000<br>Special Assessment: $100 |

| COUNTS 36 AND 37 – 21 U.S.C. §§ 841(a)(1), (b)(1)(D) | |
|---|---|
| Distribution, and Possession With Intent to Distribute, Methamphetamine and Cocaine | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>JA'DEL RAYNARD McFIELD | Methamphetamine (Count 36)<br><br>Max. Prison Term: Life<br>Min. Prison Term: 10 Years<br>Max. Supervised Release Term: Life<br>Min. Supervised Release Term: 5 Years<br>Maximum Fine: $10,000,000<br>Special Assessment: $100<br><br>Cocaine (Count 37)<br><br>Max. Prison Term: 40 Years<br>Min. Prison Term: 5 Years<br>Max. Supervised Release Term: Life<br>Min. Supervised Release Term: 4 Years<br>Maximum Fine: $5,000,000<br>Special Assessment: $100 |

| COUNT 38 – 18 U.S.C. § 1956(a)(1)(A)(i) Money Laundering with Intent to Promote Narcotics Trafficking | |
| --- | --- |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT | Max. Prison Term: 20 Years<br>Max. Supervised Release Term: 3 Years<br>Maximum Fine: $500,000<br>Special Assessment: $100 |

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☒ SUPERSEDING

### OFFENSE CHARGED

See attachment.

☐ Petty
☐ Minor
☐ Misde-
meanor
☒ Felony

PENALTY:   See attachment.

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

FILED

### DEFENDANT - U.S

AUG 1 1 2016

ANTHONY JEROME TURNER

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

DISTRICT COURT NUMBER

CR 15-00266 HSG

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

Drug Enforcement Administration and IRS-CI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person
Furnishing Information on this form   BRIAN J. STRETCH

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   GARTH HIRE, AUSA

### DEFENDANT

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges

☐ Federal   ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer   ☐ Yes   If "Yes"
been filed?   ☐ No   give date
filed

DATE OF ▶   Month/Day/Year
ARREST

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▶   Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:

☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT   Bail Amount: No Bail

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

*\* Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment*

Date/Time:                     Before Judge:

Comments:

PENALTY SHEET
*UNITED STATES v. JEREMY JAMES LUCKETT, et al.*
CR 15-00266 HSG

| COUNT 1 – 18 U.S.C. § 371 | |
|---|---|
| Conspiracy to Enter an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>ANTHONY JEROME TURNER<br><br>JA'DEL RAYNARD McFIELD<br><br>KATRICE MARY ELLEN DAY<br><br>BRIANNA NICOLE HOLLOWAY<br><br>LAURA ELAINE TURNER<br><br>SHANTELL LATRICE DANIELS | Max. Prison Term:                      5 Years<br>Max. Supervised Release Term:    3 Years<br>Maximum Fine:                         $250,000<br>Special Assessment:                  $100 |

| COUNTS 2 THROUGH 34 – 49 U.S.C. §§ 46314(a), (b)(2) | |
|---|---|
| Entering an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT (All)<br><br>DAMIEN ZACKERY LEWIS (3 - 6, 22, 23, 25, 26, 28, 29, 34)<br><br>CHRISTOPHER MICHAEL CROSS (All)<br><br>ANTHONY JEROME TURNER (8, 11, 13, 16 - 18, 24, 27, 30 - 32)<br><br>JA'DEL RAYNARD McFIELD (33, 34)<br><br>KATRICE MARY ELLEN DAY (2 - 6, 9, 12)<br><br>BRIANNA NICOLE HOLLOWAY (33)<br><br>LAURA ELAINE TURNER (18, 30)<br><br>SHANTELL LATRICE DANIELS (16) | Max. Prison Term:                      10 Years<br>Max. Supervised Release Term:    3 Years<br>Maximum Fine:                         $250,000<br>Special Assessment:                  $100 |

| COUNT 35 – 21 U.S.C. §§ 846, 841(b)(1)(A), (b)(1)(B) | |
|---|---|
| Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine and Cocaine | |
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>JA'DEL RAYNARD McFIELD | Methamphetamine<br><br>Max. Prison Term:                            Life<br>Min. Prison Term:                            10 Years<br>Max. Supervised Release Term:     Life<br>Min. Supervised Release Term:      5 Years<br>Maximum Fine:                               $10,000,000<br>Special Assessment:                         $100<br><br>Cocaine<br><br>Max. Prison Term:                            40 Years<br>Min. Prison Term:                            5 Years<br>Max. Supervised Release Term:     Life<br>Min. Supervised Release Term:      4 Years<br>Maximum Fine:                               $5,000,000<br>Special Assessment:                         $100 |

| COUNTS 36 AND 37 – 21 U.S.C. §§ 841(a)(1), (b)(1)(D) | |
|---|---|
| Distribution, and Possession With Intent to Distribute, Methamphetamine and Cocaine | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>JA'DEL RAYNARD McFIELD | Methamphetamine (Count 36)<br><br>Max. Prison Term:                            Life<br>Min. Prison Term:                            10 Years<br>Max. Supervised Release Term:     Life<br>Min. Supervised Release Term:      5 Years<br>Maximum Fine:                               $10,000,000<br>Special Assessment:                         $100<br><br>Cocaine (Count 37)<br><br>Max. Prison Term:                            40 Years<br>Min. Prison Term:                            5 Years<br>Max. Supervised Release Term:     Life<br>Min. Supervised Release Term:      4 Years<br>Maximum Fine:                               $5,000,000<br>Special Assessment:                         $100 |

| COUNT 38 – 18 U.S.C. § 1956(a)(1)(A)(i) | |
| :--- | :--- |
| Money Laundering with Intent to Promote Narcotics Trafficking | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT | Max. Prison Term:               20 Years<br>Max. Supervised Release Term:   3 Years<br>Maximum Fine:                   $500,000<br>Special Assessment:             $100 |

AO 257 (Rev.,6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☒ SUPERSEDING

---

**OFFENSE CHARGED**

See attachment.

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   See attachment.

---

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

**DEFENDANT - U.S**

▸ JA'DEL RAYNARD McFIELD

FILED

AUG 1 1 2016

DISTRICT COURT NUMBER

CR 15-00266 HSG

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

---

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)

Drug Enforcement Administration and IRS-CI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW DOCKET NO. }

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO. }

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

}

Name and Office of Person
Furnishing Information on this form   BRIAN J. STRETCH

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   GARTH HIRE, AUSA

---

**DEFENDANT**

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▸

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges
   } ☐ Federal ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes   If "Yes" give date filed
been filed?   ☐ No

DATE OF ARREST   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▸ Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

---

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT     Bail Amount: No Bail

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:               Before Judge:

Comments:

**PENALTY SHEET**
*UNITED STATES v. JEREMY JAMES LUCKETT, et al.*
**CR 15-00266 HSG**

| COUNT 1 – 18 U.S.C. § 371 | |
|---|---|
| Conspiracy to Enter an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>ANTHONY JEROME TURNER<br><br>JA'DEL RAYNARD McFIELD<br><br>KATRICE MARY ELLEN DAY<br><br>BRIANNA NICOLE HOLLOWAY<br><br>LAURA ELAINE TURNER<br><br>SHANTELL LATRICE DANIELS | Max. Prison Term:                        5 Years<br>Max. Supervised Release Term:    3 Years<br>Maximum Fine:                           $250,000<br>Special Assessment:                    $100 |

| COUNTS 2 THROUGH 34 – 49 U.S.C. §§ 46314(a), (b)(2) | |
|---|---|
| Entering an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT (All)<br><br>DAMIEN ZACKERY LEWIS (3 - 6, 22, 23, 25, 26, 28, 29, 34)<br><br>CHRISTOPHER MICHAEL CROSS (All)<br><br>ANTHONY JEROME TURNER (8, 11, 13, 16 - 18, 24, 27, 30 - 32)<br><br>JA'DEL RAYNARD McFIELD (33, 34)<br><br>KATRICE MARY ELLEN DAY (2 - 6, 9, 12)<br><br>BRIANNA NICOLE HOLLOWAY (33)<br><br>LAURA ELAINE TURNER (18, 30)<br><br>SHANTELL LATRICE DANIELS (16) | Max. Prison Term:                        10 Years<br>Max. Supervised Release Term:    3 Years<br>Maximum Fine:                           $250,000<br>Special Assessment:                    $100 |

| COUNT 35 – 21 U.S.C. §§ 846, 841(b)(1)(A), (b)(1)(B) | |
|---|---|
| Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine and Cocaine | |
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>JA'DEL RAYNARD McFIELD | Methamphetamine<br><br>Max. Prison Term:             Life<br>Min. Prison Term:             10 Years<br>Max. Supervised Release Term:   Life<br>Min. Supervised Release Term:    5 Years<br>Maximum Fine:             $10,000,000<br>Special Assessment:         $100<br><br>Cocaine<br><br>Max. Prison Term:             40 Years<br>Min. Prison Term:             5 Years<br>Max. Supervised Release Term:   Life<br>Min. Supervised Release Term:    4 Years<br>Maximum Fine:             $5,000,000<br>Special Assessment:         $100 |

| COUNTS 36 AND 37 – 21 U.S.C. §§ 841(a)(1), (b)(1)(D) | |
|---|---|
| Distribution, and Possession With Intent to Distribute, Methamphetamine and Cocaine | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>JA'DEL RAYNARD McFIELD | Methamphetamine (Count 36)<br><br>Max. Prison Term:             Life<br>Min. Prison Term:             10 Years<br>Max. Supervised Release Term:   Life<br>Min. Supervised Release Term:    5 Years<br>Maximum Fine:             $10,000,000<br>Special Assessment:         $100<br><br>Cocaine (Count 37)<br><br>Max. Prison Term:             40 Years<br>Min. Prison Term:             5 Years<br>Max. Supervised Release Term:   Life<br>Min. Supervised Release Term:    4 Years<br>Maximum Fine:             $5,000,000<br>Special Assessment:         $100 |

| COUNT 38 – 18 U.S.C. § 1956(a)(1)(A)(i) Money Laundering with Intent to Promote Narcotics Trafficking | |
|---|---|
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT | Max. Prison Term:               20 Years<br>Max. Supervised Release Term:   3 Years<br>Maximum Fine:                   $500,000<br>Special Assessment:             $100 |

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☒ SUPERSEDING

―――― **OFFENSE CHARGED** ――――

See attachment.

☐ Petty

☐ Minor

☐ Misde-
meanor

☒ Felony

PENALTY:   See attachment.

―――― Name of District Court, and/or Judge/Magistrate Location ――――

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

*FILED*

―― **DEFENDANT - U.S** ――

▶ KATRICE MARY ELLEN DAY

AUG 1 1 2016

DISTRICT COURT NUMBER

CR 15-00266 HSG

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

―――――――――― **PROCEEDING** ――――――――――

Name of Complainant Agency, or Person (& Title, if any)

Drug Enforcement Administration and IRS-CI

☐ person is awaiting trial in another Federal or State Court, give name of court

_____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

_____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY   ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

}

Name and Office of Person Furnishing Information on this form   BRIAN J. STRETCH

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   GARTH HIRE, AUSA

―――――――――― **DEFENDANT** ――――――――――

**IS *NOT* IN CUSTODY**

Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

_____

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges

} ☐ Federal   ☐ State

If answer to (6) is "Yes", show name of institution

_____

Has detainer been filed?   ☐ Yes   ☐ No

} If "Yes" give date filed

_____

**DATE OF ARREST** ▶   Month/Day/Year

_____

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶   Month/Day/Year

_____

☐ This report amends AO 257 previously submitted

―――――― **ADDITIONAL INFORMATION OR COMMENTS** ――――――

PROCESS:

☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT

Bail Amount: No Bail

If Summons, complete following:

☐ Arraignment   ☐ Initial Appearance

Defendant Address:

_____

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____   Before Judge: _____

Comments:

PENALTY SHEET
*UNITED STATES v. JEREMY JAMES LUCKETT, et al.*
CR 15-00266 HSG

| COUNT 1 – 18 U.S.C. § 371 | |
|---|---|
| Conspiracy to Enter an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>ANTHONY JEROME TURNER<br><br>JA'DEL RAYNARD McFIELD<br><br>KATRICE MARY ELLEN DAY<br><br>BRIANNA NICOLE HOLLOWAY<br><br>LAURA ELAINE TURNER<br><br>SHANTELL LATRICE DANIELS | Max. Prison Term:      5 Years<br>Max. Supervised Release Term:   3 Years<br>Maximum Fine:     $250,000<br>Special Assessment:     $100 |

| COUNTS 2 THROUGH 34 – 49 U.S.C. §§ 46314(a), (b)(2) | |
|---|---|
| Entering an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT (All)<br><br>DAMIEN ZACKERY LEWIS (3 - 6, 22, 23, 25, 26, 28, 29, 34)<br><br>CHRISTOPHER MICHAEL CROSS (All)<br><br>ANTHONY JEROME TURNER (8, 11, 13, 16 - 18, 24, 27, 30 - 32)<br><br>JA'DEL RAYNARD McFIELD (33, 34)<br><br>KATRICE MARY ELLEN DAY (2 - 6, 9, 12)<br><br>BRIANNA NICOLE HOLLOWAY (33)<br><br>LAURA ELAINE TURNER (18, 30)<br><br>SHANTELL LATRICE DANIELS (16) | Max. Prison Term:     10 Years<br>Max. Supervised Release Term:   3 Years<br>Maximum Fine:     $250,000<br>Special Assessment:     $100 |

| COUNT 35 – 21 U.S.C. §§ 846, 841(b)(1)(A), (b)(1)(B) | |
|---|---|
| Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine and Cocaine | |
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT <br><br> DAMIEN ZACKERY LEWIS <br><br> CHRISTOPHER MICHAEL CROSS <br><br> JA'DEL RAYNARD McFIELD | Methamphetamine <br><br> Max. Prison Term: Life <br> Min. Prison Term: 10 Years <br> Max. Supervised Release Term: Life <br> Min. Supervised Release Term: 5 Years <br> Maximum Fine: $10,000,000 <br> Special Assessment: $100 <br><br> Cocaine <br><br> Max. Prison Term: 40 Years <br> Min. Prison Term: 5 Years <br> Max. Supervised Release Term: Life <br> Min. Supervised Release Term: 4 Years <br> Maximum Fine: $5,000,000 <br> Special Assessment: $100 |

| COUNTS 36 AND 37 – 21 U.S.C. §§ 841(a)(1), (b)(1)(D) | |
|---|---|
| Distribution, and Possession With Intent to Distribute, Methamphetamine and Cocaine | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT <br><br> DAMIEN ZACKERY LEWIS <br><br> CHRISTOPHER MICHAEL CROSS <br><br> JA'DEL RAYNARD McFIELD | Methamphetamine (Count 36) <br><br> Max. Prison Term: Life <br> Min. Prison Term: 10 Years <br> Max. Supervised Release Term: Life <br> Min. Supervised Release Term: 5 Years <br> Maximum Fine: $10,000,000 <br> Special Assessment: $100 <br><br> Cocaine (Count 37) <br><br> Max. Prison Term: 40 Years <br> Min. Prison Term: 5 Years <br> Max. Supervised Release Term: Life <br> Min. Supervised Release Term: 4 Years <br> Maximum Fine: $5,000,000 <br> Special Assessment: $100 |

| COUNT 38 – 18 U.S.C. § 1956(a)(1)(A)(i) | |
|---|---|
| Money Laundering with Intent to Promote Narcotics Trafficking | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT | Max. Prison Term:                              20 Years<br>Max. Supervised Release Term:     3 Years<br>Maximum Fine:                              $500,000<br>Special Assessment:                          $100 |

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☒ SUPERSEDING

┌─ OFFENSE CHARGED ─────────────

See attachment.

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   See attachment.

Name of District Court, and/or Judge/Magistrate Location

### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

┌─ DEFENDANT - U.S ─────────────

**FILED**

▶ BRIANNA NICOLE HOLLOWAY     AUG 11 2016

DISTRICT COURT NUMBER

CR 15-00266 HSG

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

┌─ PROCEEDING ─────────────

Name of Complainant Agency, or Person (& Title, if any)

Drug Enforcement Administration and IRS-CI

☐ person is awaiting trial in another Federal or State Court, give name of court

_____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

_____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:       SHOW DOCKET NO.
☐ U.S. ATTORNEY   ☐ DEFENSE

☐ this prosecution relates to a pending case involving this same defendant       MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person
Furnishing Information on this form       BRIAN J. STRETCH

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)       GARTH HIRE, AUSA

┌─ DEFENDANT ─────────────

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

_____

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction       ☐ Federal   ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

_____

Has detainer   ☐ Yes   If "Yes" give date filed
been filed?   ☐ No

DATE OF ARREST ▶    Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶    Month/Day/Year

☐ This report amends AO 257 previously submitted

┌─ ADDITIONAL INFORMATION OR COMMENTS ─────────────

PROCESS:
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT   Bail Amount: No Bail

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance
Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____   Before Judge: _____

Comments:

## PENALTY SHEET
### *UNITED STATES v. JEREMY JAMES LUCKETT, et al.*
### CR 15-00266 HSG

| COUNT 1 – 18 U.S.C. § 371 | |
|---|---|
| Conspiracy to Enter an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br>DAMIEN ZACKERY LEWIS<br>CHRISTOPHER MICHAEL CROSS<br>ANTHONY JEROME TURNER<br>JA'DEL RAYNARD McFIELD<br>KATRICE MARY ELLEN DAY<br>BRIANNA NICOLE HOLLOWAY<br>LAURA ELAINE TURNER<br>SHANTELL LATRICE DANIELS | Max. Prison Term:       5 Years<br>Max. Supervised Release Term:   3 Years<br>Maximum Fine:       $250,000<br>Special Assessment:     $100 |

| COUNTS 2 THROUGH 34 – 49 U.S.C. §§ 46314(a), (b)(2) | |
|---|---|
| Entering an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT (All)<br>DAMIEN ZACKERY LEWIS (3 - 6, 22, 23, 25, 26, 28, 29, 34)<br>CHRISTOPHER MICHAEL CROSS (All)<br>ANTHONY JEROME TURNER (8, 11, 13, 16 - 18, 24, 27, 30 - 32)<br>JA'DEL RAYNARD McFIELD (33, 34)<br>KATRICE MARY ELLEN DAY (2 - 6, 9, 12)<br>BRIANNA NICOLE HOLLOWAY (33)<br>LAURA ELAINE TURNER (18, 30)<br>SHANTELL LATRICE DANIELS (16) | Max. Prison Term:      10 Years<br>Max. Supervised Release Term:   3 Years<br>Maximum Fine:     $250,000<br>Special Assessment:    $100 |

| COUNT 35 – 21 U.S.C. §§ 846, 841(b)(1)(A), (b)(1)(B) | |
|---|---|
| Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine and Cocaine | |
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br>DAMIEN ZACKERY LEWIS<br>CHRISTOPHER MICHAEL CROSS<br>JA'DEL RAYNARD McFIELD | Methamphetamine<br><br>Max. Prison Term:                        Life<br>Min. Prison Term:                         10 Years<br>Max. Supervised Release Term:     Life<br>Min. Supervised Release Term:      5 Years<br>Maximum Fine:                             $10,000,000<br>Special Assessment:                       $100<br><br>Cocaine<br><br>Max. Prison Term:                        40 Years<br>Min. Prison Term:                         5 Years<br>Max. Supervised Release Term:     Life<br>Min. Supervised Release Term:      4 Years<br>Maximum Fine:                             $5,000,000<br>Special Assessment:                       $100 |

| COUNTS 36 AND 37 – 21 U.S.C. §§ 841(a)(1), (b)(1)(D) | |
|---|---|
| Distribution, and Possession With Intent to Distribute, Methamphetamine and Cocaine | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT<br>DAMIEN ZACKERY LEWIS<br>CHRISTOPHER MICHAEL CROSS<br>JA'DEL RAYNARD McFIELD | Methamphetamine (Count 36)<br><br>Max. Prison Term:                        Life<br>Min. Prison Term:                         10 Years<br>Max. Supervised Release Term:     Life<br>Min. Supervised Release Term:      5 Years<br>Maximum Fine:                             $10,000,000<br>Special Assessment:                       $100<br><br>Cocaine (Count 37)<br><br>Max. Prison Term:                        40 Years<br>Min. Prison Term:                         5 Years<br>Max. Supervised Release Term:     Life<br>Min. Supervised Release Term:      4 Years<br>Maximum Fine:                             $5,000,000<br>Special Assessment:                       $100 |

| COUNT 38 – 18 U.S.C. § 1956(a)(1)(A)(i)<br>Money Laundering with Intent to Promote Narcotics Trafficking | |
| --- | --- |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT | Max. Prison Term: 20 Years<br>Max. Supervised Release Term: 3 Years<br>Maximum Fine: $500,000<br>Special Assessment: $100 |

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☒ SUPERSEDING

─── OFFENSE CHARGED ───

See attachment.

~~SEALED COURT ORDER~~

☐ Petty
☐ Minor
☐ Misde-
   meanor
☒ Felony

PENALTY:  See attachment.

─────────────────────────

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

─── DEFENDANT - U.S ───

FILED

▶ LAURA ELAINE TURNER

AUG 1 1 2016

DISTRICT COURT NUMBER

CR 15-00266 HSG

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

─── PROCEEDING ───

Name of Complainant Agency, or Person (& Title, if any)

Drug Enforcement Administration and IRS-CI

☐ person is awaiting trial in another Federal or State Court, give name of court

_____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

_____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. ATTORNEY  ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

}

Name and Office of Person Furnishing Information on this form    BRIAN J. STRETCH

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    GARTH HIRE, AUSA

─── DEFENDANT ───

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

_____

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution

_____

Has detainer ☐ Yes    If "Yes"
been filed?  ☐ No     give date filed

DATE OF ▶ Month/Day/Year
ARREST

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▶ Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

─── ADDITIONAL INFORMATION OR COMMENTS ───

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT    Bail Amount: No Bail

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:                    Before Judge:

Comments:

**PENALTY SHEET**
*UNITED STATES v. JEREMY JAMES LUCKETT, et al.*
**CR 15-00266 HSG**

| COUNT 1 – 18 U.S.C. § 371 | |
|---|---|
| Conspiracy to Enter an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>ANTHONY JEROME TURNER<br><br>JA'DEL RAYNARD McFIELD<br><br>KATRICE MARY ELLEN DAY<br><br>BRIANNA NICOLE HOLLOWAY<br><br>LAURA ELAINE TURNER<br><br>SHANTELL LATRICE DANIELS | Max. Prison Term:               5 Years<br>Max. Supervised Release Term:  3 Years<br>Maximum Fine:              $250,000<br>Special Assessment:       $100 |

| COUNTS 2 THROUGH 34 – 49 U.S.C. §§ 46314(a), (b)(2) | |
|---|---|
| Entering an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT (All)<br><br>DAMIEN ZACKERY LEWIS (3 - 6, 22, 23, 25, 26, 28, 29, 34)<br><br>CHRISTOPHER MICHAEL CROSS (All)<br><br>ANTHONY JEROME TURNER (8, 11, 13, 16 - 18, 24, 27, 30 - 32)<br><br>JA'DEL RAYNARD McFIELD (33, 34)<br><br>KATRICE MARY ELLEN DAY (2 - 6, 9, 12)<br><br>BRIANNA NICOLE HOLLOWAY (33)<br><br>LAURA ELAINE TURNER (18, 30)<br><br>SHANTELL LATRICE DANIELS (16) | Max. Prison Term:               10 Years<br>Max. Supervised Release Term:  3 Years<br>Maximum Fine:              $250,000<br>Special Assessment:       $100 |

| COUNT 35 – 21 U.S.C. §§ 846, 841(b)(1)(A), (b)(1)(B) ||
|---|---|
| Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine and Cocaine ||
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>JA'DEL RAYNARD McFIELD | Methamphetamine<br><br>Max. Prison Term:                Life<br>Min. Prison Term:                10 Years<br>Max. Supervised Release Term:   Life<br>Min. Supervised Release Term:   5 Years<br>Maximum Fine:                   $10,000,000<br>Special Assessment:             $100<br><br>Cocaine<br><br>Max. Prison Term:                40 Years<br>Min. Prison Term:                5 Years<br>Max. Supervised Release Term:   Life<br>Min. Supervised Release Term:   4 Years<br>Maximum Fine:                   $5,000,000<br>Special Assessment:             $100 |

| COUNTS 36 AND 37 – 21 U.S.C. §§ 841(a)(1), (b)(1)(D) ||
|---|---|
| Distribution, and Possession With Intent to Distribute, Methamphetamine and Cocaine ||
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>JA'DEL RAYNARD McFIELD | Methamphetamine (Count 36)<br><br>Max. Prison Term:                Life<br>Min. Prison Term:                10 Years<br>Max. Supervised Release Term:   Life<br>Min. Supervised Release Term:   5 Years<br>Maximum Fine:                   $10,000,000<br>Special Assessment:             $100<br><br>Cocaine (Count 37)<br><br>Max. Prison Term:                40 Years<br>Min. Prison Term:                5 Years<br>Max. Supervised Release Term:   Life<br>Min. Supervised Release Term:   4 Years<br>Maximum Fine:                   $5,000,000<br>Special Assessment:             $100 |

| COUNT 38 – 18 U.S.C. § 1956(a)(1)(A)(i) | |
|---|---|
| Money Laundering with Intent to Promote Narcotics Trafficking | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT | Max. Prison Term:                          20 Years<br>Max. Supervised Release Term:   3 Years<br>Maximum Fine:                            $500,000<br>Special Assessment:                      $100 |

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☒ SUPERSEDING

—— OFFENSE CHARGED ——

See attachment.

☐ Petty
☐ Minor
☐ Misde-
    meanor
☒ Felony

PENALTY:   See attachment.

—— Name of District Court, and/or Judge/Magistrate Location ——
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

—— DEFENDANT - U.S ——
▶ SHANTELL LATRICE DANIELS

DISTRICT COURT NUMBER
CR 15-00266 HSG

FILED

AUG 11 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

—————— PROCEEDING ——————

Name of Complainant Agency, or Person (& Title, if any)

Drug Enforcement Administration and IRS-CI

☐ person is awaiting trial in another Federal or State Court,
    give name of court

_____

☐ this person/proceeding is transferred from another district
    per (circle one) FRCrp 20, 21, or 40. Show District

_____

☐ this is a reprosecution of
    charges previously dismissed
    which were dismissed on motion
    of:                               SHOW
    ☐ U.S. ATTORNEY  ☐ DEFENSE    DOCKET NO.

☐ this prosecution relates to a
    pending case involving this same
    defendant                         MAGISTRATE
                                      CASE NO.
☐ prior proceedings or appearance(s)
    before U.S. Magistrate regarding this
    defendant were recorded under

——————————————————————————————
Name and Office of Person
Furnishing Information on this form    BRIAN J. STRETCH

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)      GARTH HIRE, AUSA

—— DEFENDANT ——
**IS *NOT* IN CUSTODY**
    Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
      summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

_____

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction              ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
      If answer to (6) is "Yes", show name of institution

_____

Has detainer  ☐ Yes      If "Yes"
been filed?   ☐ No        give date
                          filed    _____

**DATE OF**      ▶   Month/Day/Year
**ARREST**           _____

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED**  ▶  Month/Day/Year
**TO U.S. CUSTODY**       _____

☐ This report amends AO 257 previously submitted

—————— ADDITIONAL INFORMATION OR COMMENTS ——————

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT    Bail Amount: No Bail

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance      * Where defendant previously apprehended on complaint, no new summons or
                                          warrant needed, since Magistrate has scheduled arraignment
Defendant Address:

_____

                                      Date/Time: _____  Before Judge: _____

Comments:

**PENALTY SHEET**

*UNITED STATES v. JEREMY JAMES LUCKETT, et al.*

**CR 15-00266 HSG**

| COUNT 1 – 18 U.S.C. § 371 | |
|---|---|
| Conspiracy to Enter an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>ANTHONY JEROME TURNER<br><br>JA'DEL RAYNARD McFIELD<br><br>KATRICE MARY ELLEN DAY<br><br>BRIANNA NICOLE HOLLOWAY<br><br>LAURA ELAINE TURNER<br><br>SHANTELL LATRICE DANIELS | Max. Prison Term:            5 Years<br>Max. Supervised Release Term:   3 Years<br>Maximum Fine:                $250,000<br>Special Assessment:          $100 |

| COUNTS 2 THROUGH 34 – 49 U.S.C. §§ 46314(a), (b)(2) | |
|---|---|
| Entering an Airport Area in Violation of Security Requirements | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT (All)<br><br>DAMIEN ZACKERY LEWIS (3 - 6, 22, 23, 25, 26, 28, 29, 34)<br><br>CHRISTOPHER MICHAEL CROSS (All)<br><br>ANTHONY JEROME TURNER (8, 11, 13, 16 - 18, 24, 27, 30 - 32)<br><br>JA'DEL RAYNARD McFIELD (33, 34)<br><br>KATRICE MARY ELLEN DAY (2 - 6, 9, 12)<br><br>BRIANNA NICOLE HOLLOWAY (33)<br><br>LAURA ELAINE TURNER (18, 30)<br><br>SHANTELL LATRICE DANIELS (16) | Max. Prison Term:            10 Years<br>Max. Supervised Release Term:   3 Years<br>Maximum Fine:                $250,000<br>Special Assessment:          $100 |

| COUNT 35 – 21 U.S.C. §§ 846, 841(b)(1)(A), (b)(1)(B) | |
|---|---|
| Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine and Cocaine | |
| **DEFENDANTS** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>JA'DEL RAYNARD McFIELD | Methamphetamine<br><br>Max. Prison Term:                         Life<br>Min. Prison Term:                         10 Years<br>Max. Supervised Release Term:     Life<br>Min. Supervised Release Term:       5 Years<br>Maximum Fine:                              $10,000,000<br>Special Assessment:                      $100<br><br>Cocaine<br><br>Max. Prison Term:                         40 Years<br>Min. Prison Term:                         5 Years<br>Max. Supervised Release Term:     Life<br>Min. Supervised Release Term:       4 Years<br>Maximum Fine:                              $5,000,000<br>Special Assessment:                      $100 |

| COUNTS 36 AND 37 – 21 U.S.C. §§ 841(a)(1), (b)(1)(D) | |
|---|---|
| Distribution, and Possession With Intent to Distribute, Methamphetamine and Cocaine | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT<br><br>DAMIEN ZACKERY LEWIS<br><br>CHRISTOPHER MICHAEL CROSS<br><br>JA'DEL RAYNARD McFIELD | Methamphetamine (Count 36)<br><br>Max. Prison Term:                         Life<br>Min. Prison Term:                         10 Years<br>Max. Supervised Release Term:     Life<br>Min. Supervised Release Term:       5 Years<br>Maximum Fine:                              $10,000,000<br>Special Assessment:                      $100<br><br>Cocaine (Count 37)<br><br>Max. Prison Term:                         40 Years<br>Min. Prison Term:                         5 Years<br>Max. Supervised Release Term:     Life<br>Min. Supervised Release Term:       4 Years<br>Maximum Fine:                              $5,000,000<br>Special Assessment:                      $100 |

| COUNT 38 – 18 U.S.C. § 1956(a)(1)(A)(i) | |
| Money Laundering with Intent to Promote Narcotics Trafficking | |
| **DEFENDANTS (Count Number)** | **PENALTY** |
| JEREMY JAMES LUCKETT | Max. Prison Term: 20 Years<br>Max. Supervised Release Term: 3 Years<br>Maximum Fine: $500,000<br>Special Assessment: $100 |

# UNITED STATES DISTRICT COURT



## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA



### VENUE: OAKLAND

UNDER SEAL

CR15-00266 HSG

---

## UNITED STATES OF AMERICA,

### V.

JEREMY JAMES LUCKETT,
a/k/a "J-Luck,"
DAMIEN ZACKERY LEWIS,
a/k/a Damien Zachary Lewis,
a/k/a Damien Zackery Lewis,
a/k/a "D-Lew,"
a/k/a "damacktastic1,"
a/k/a "mackfrugul,"
CHRISTOPHER MICHAEL CROSS,
ANTHONY JEROME TURNER,
JA'DEL RAYNARD McFIELD,
KATRICE MARY ELLEN DAY,
BRIANNA NICOLE HOLLOWAY,
LAURA ELAINE TURNER, and
SHANTELL LATRICE DANIELS,

DEFENDANT(S).

---

## SUPERSEDING INDICTMENT

18 U.S.C. § 371 – Conspiracy to Enter an Airport Area in Violation of
Security Requirements and to Defraud the United States; 49 U.S.C. §§ 46314(a),
46314(b)(2) – Entering an Airport Area in Violation of Security Requirements; 21 U.S.C.
§ 846 – Conspiracy to Distribute, and Possess with Intent to Distribute,
Methamphetamine and Cocaine; 21 U.S.C. § 841(a)(1) – Possession With Intent to
Distribute, and Distribution of, Methamphetamine and

3

Cocaine; 18 U.S.C. § 1956(a)(1)(A)(i) – Money Laundering with Intent to
Promote Drug Trafficking; 21 U.S.C. § 853 – Drug Forfeiture Allegation

A true bill. _____

_____
                                                          Foreman

Filed in open court this _____ day of _____, 2016

_____
                                                          Clerk

_____

Bail, $ _____  no bail warrants for Turner,
                                                    McField, Day,
                                                    Holloway,
                                                    Turner & Daniels
                                                          only

BRIAN J. STRETCH (CABN 163973)
United States Attorney

**FILED**

AUG 1 1 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>JEREMY JAMES LUCKETT,<br>  a/k/a "J-Luck,"<br>DAMIEN ZACKERY LEWIS,<br>  a/k/a Damien Zachary Lewis,<br>  a/k/a Damien Zackery Lewis,<br>  a/k/a "D-Lew,"<br>  a/k/a "damacktastic1,"<br>  a/k/a "Mack Frugul,"<br>CHRISTOPHER MICHAEL CROSS,<br>ANTHONY JEROME TURNER,<br>JA'DEL RAYNARD McFIELD,<br>KATRICE MARY ELLEN DAY,<br>BRIANNA NICOLE HOLLOWAY,<br>LAURA ELAINE TURNER, and<br>SHANTELL LATRICE DANIELS,<br><br>      Defendants. | CASE NO. CR 15-00266 HSG<br><br>VIOLATIONS:  18 U.S.C. § 371 – Conspiracy to Enter an Airport Area in Violation of Security Requirements and to Defraud the United States; 49 U.S.C. §§ 46314(a), 46314(b)(2) – Entering an Airport Area in Violation of Security Requirements; 21 U.S.C. § 846 – Conspiracy to Distribute, and Possess with Intent to Distribute, Methamphetamine and Cocaine; 21 U.S.C. § 841(a)(1) – Possession With Intent to Distribute, and Distribution of, Methamphetamine and Cocaine; 18 U.S.C. § 1956(a)(1)(A)(i) – Money Laundering with Intent to Promote Drug Trafficking; 21 U.S.C. § 853 – Drug Forfeiture Allegation<br><br>OAKLAND VENUE |

S U P E R S E D I N G   I N D I C T M E N T



District Court
Criminal Case Processing

SUPERSEDING INDICTMENT            1

The Grand Jury charges:

COUNT ONE:          (18 U.S.C. § 371 – Conspiracy to Enter an Airport Area in Violation of Security
                    Requirements and to Defraud the United States)

A.     General Allegations

At all times material to this indictment:

1.     Operations and security at the Oakland International Airport (Oakland Airport) were regulated by Title 49, Code of Federal Regulations.

2.     The Oakland Airport was operated by the Port of Oakland.

3.     The Transportation Security Administration (TSA) provided civil aviation security throughout the United States and maintained security screening checkpoints in commercial airports, including the Oakland Airport.

4.     The Air Operations Area (AOA) was an area of the Oakland Airport that was accessible to employees but not to passengers who had completed security screening through a TSA checkpoint.

5.     The passenger terminals beyond the TSA checkpoints at the Oakland Airport were secure and sterile areas as those terms are defined in 49 C.F.R. Part 1540.5.

6.     Title 49, Code of Federal Regulations, Section 1540.105(a)(2) prohibited any person to enter, or be present within, a secured area or sterile area without complying with the systems, measures, or procedures being applied to control access to, or presence or movement in, those areas.

7.     Title 49, Code of Federal Regulations, Section 1540.107(a) prohibited any person from entering or boarding an aircraft without submitting to the screening and inspection of his or her person and accessible property in accordance with the procedures being applied to control access to that area or aircraft.

8.     Defendant CHRISTOPHER MICHAEL CROSS (CROSS) was employed by Southwest Airlines as a provisioning agent.

9.     As such, defendant CROSS was issued a security badge and door access code by the Port of Oakland which permitted him to have access to the AOA and almost all secure and sterile areas of the Oakland Airport, including the passenger terminals, without undergoing security screening or inspection.

SUPERSEDING INDICTMENT                    2

B.    Objects of the Conspiracy

Beginning on a date unknown, but no later than January 27, 2011, and continuing until on or about April 28, 2014, in the Northern District of California, and elsewhere, the defendants,

JEREMY JAMES LUCKETT,
a/k/a "J-Luck,"
DAMIEN ZACKERY LEWIS,
a/k/a Damien Zachary Lewis,
a/k/a Damien Zackery Lewis,
a/k/a "D-Lew,"
a/k/a "damacktastic1,"
a/k/a "Mack Frugul,"
CHRISTOPHER MICHAEL CROSS,
ANTHONY JEROME TURNER,
JA'DEL RAYNARD McFIELD,
KATRICE MARY ELLEN DAY,
BRIANNA NICOLE HOLLOWAY,
LAURA ELAINE TURNER,
SHANTELL LATRICE DANIELS,

and others known and unknown to the Grand Jury, did knowingly and intentionally conspire to commit offenses against the United States:

(1)    knowingly and willfully enter an airport area that serviced an air carrier, in violation of security requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement that all individuals who board an aircraft must submit their person and accessible property to inspection and screening, and with the intent to evade such security procedures and restrictions;

(2)    knowingly and willfully enter an airport area that serviced an air carrier, in violation of security requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement that all individuals who board an aircraft must submit their person and accessible property to inspection and screening, and with the intent to commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession with intent to distribute a controlled substance and conspiracy to distribute a controlled substance;

and did knowingly and intentionally conspire to defraud the United States through deceit, craft, trickery, and dishonest means for the purposes of attempting to defeat and obstruct the lawful functions of the TSA in providing civil aviation security.

1  C.    Means by Which the Object of the Conspiracy Was to Be Accomplished

2        1.    Defendants JEREMY JAMES LUCKETT (LUCKETT), DAMIEN ZACKERY LEWIS

3  (LEWIS), CROSS, ANTHONY JEROME TURNER (A. TURNER), JA'DEL RAYNARD McFIELD,

4  (McFIELD), KATRICE MARY ELLEN DAY (DAY), BRIANNA NICOLE HOLLOWAY

5  (HOLLOWAY), LAURA ELAINE TURNER (L. TURNER), and SHANTELL LATRICE DANIELS

6  (DANIELS), would arrange to transport, deliver, and sell controlled substances, specifically,

7  methamphetamine and cocaine, to buyers located in Hawaii.

8        2.    Defendants LUCKETT, LEWIS, and others known and unknown to the grand jury,

9  would arrange to obtain and package methamphetamine and cocaine in Northern California for

10 distribution.

11       3.    Defendants LUCKETT, LEWIS, A. TURNER, McFIELD, and others known and

12 unknown to the grand jury, would purchase fully refundable plane tickets to fly on Southwest Airlines

13 from Oakland, California, to either Los Angeles, California; Reno, Nevada; or Las Vegas, Nevada.

14       4.    Defendant LUCKETT would purchase, and direct others known and unknown to the

15 grand jury to purchase, plane tickets for DAY, HOLLOWAY, L. TURNER, DANIELS, and others

16 known and unknown to the grand jury, to fly on either Hawaiian Airlines or Alaska Airlines to Hawaii

17 on the same morning that LUCKETT, LEWIS, A. TURNER, McFIELD, and others known and

18 unknown to the grand jury, were scheduled to fly to Los Angeles, Reno, or Las Vegas.

19       5.    Defendants LUCKETT, LEWIS, and others known and unknown to the grand jury,

20 would purchase these plane tickets to Hawaii, Los Angeles, and Reno, using cash, credit cards, and pre-

21 paid debit cards in their names and the names of others known and unknown to the grand jury.

22       6.    Defendant LUCKETT, and others known and unknown to the grand jury, would pay

23 DAY, HOLLOWAY, L. TURNER, DANIELS, and others known and unknown to the grand jury,

24 hundreds of dollars in cash as an initial payment for flying to Hawaii with packages containing

25 methamphetamine and cocaine and to use as spending cash during their trip.

26       7.    Defendant LUCKETT would meet with CROSS outside of the airport, usually on the

27 same morning that co-conspirators were scheduled to fly to Hawaii, and LUCKETT would provide

28 CROSS with a package containing methamphetamine and cocaine.

SUPERSEDING INDICTMENT             4

8. Defendant CROSS would bring the package containing methamphetamine and cocaine through an employee entrance at Oakland Airport without having to pass through a TSA screening checkpoint.

9. Defendants LUCKETT, LEWIS, A. TURNER, McFIELD, DAY, HOLLOWAY, L. TURNER, DANIELS, and others known and unknown to the grand jury, would arrive at the Oakland Airport early in the morning of their day of departure and pass through the TSA security screening checkpoint, with the boarding passes for the plane tickets, which were necessary since only ticketed passengers were allowed to pass through the checkpoints.

10. Defendant CROSS would transport the package containing methamphetamine and cocaine from the AOA into a sterile area of the Oakland Airport passenger terminal by misusing the security access provided to him as a Southwest employee and would go to the area where outbound passengers have cleared the TSA security screening checkpoint (Passenger Terminal).

11. Defendant LUCKETT would communicate via mobile telephone with CROSS to coordinate a meeting between CROSS and LUCKETT, LEWIS, A. TURNER, McFIELD, and others known and unknown to the grand jury, inside Terminal 2 of the Oakland Airport.

12. Defendant CROSS would meet with LUCKETT, LEWIS, A. TURNER, McFIELD, and others known and unknown to the grand jury, in a bathroom in Terminal 2 of the Oakland Airport passenger terminal and provide them with the packages containing methamphetamine and cocaine which had not been subjected to security screening.

13. Defendants LUCKETT, LEWIS, A. TURNER, McFIELD, and others known and unknown to the grand jury, would meet with DAY, HOLLOWAY, L. TURNER, DANIELS, and others known and unknown to the grand jury, and provide them with the packages containing methamphetamine and cocaine.

14. Defendants DAY, HOLLOWAY, L. TURNER, DANIELS, and others known and unknown to the grand jury, would place the packages containing methamphetamine and cocaine into their carry-on luggage and board their outbound aircraft knowing that the packages had not been subjected to security screening.

15.     Defendants LUCKETT, LEWIS, A. TURNER, McFIELD, and others known and unknown to the grand jury, would not board their outbound Southwest flight and would instead leave the Oakland Airport.

16.     Defendant LUCKETT, and others known and unknown to the grand jury, would obtain refunds or credits for the unused airfare that could be used to purchase future flights on Southwest Airlines.

17.     Once in Hawaii, defendants DAY, HOLLOWAY, L. TURNER, DANIELS, and others known and unknown to the grand jury, would travel from the airport to hotel rooms that had been booked for them by LUCKETT and others known and unknown to the grand jury.

18.     Inside the hotel rooms, defendants DAY, HOLLOWAY, L. TURNER, DANIELS, and others known and unknown to the grand jury, would distribute the package containing methamphetamine and cocaine to another individual.

19.     Defendants DAY, HOLLOWAY, L. TURNER, DANIELS, and others known and unknown to the grand jury, would stay overnight in the hotel rooms in Hawaii.

20.     Defendants DAY, HOLLOWAY, L. TURNER, DANIELS, and others known and unknown to the grand jury, would fly back to Northern California from Hawaii the next day.

D.    Overt Acts

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates, the defendants,

JEREMY JAMES LUCKETT,
a/k/a "J-Luck,"
DAMIEN ZACKERY LEWIS,
a/k/a Damien Zachary Lewis,
a/k/a Damien Zackery Lewis,
a/k/a "D-Lew,"
a/k/a "damacktastic1,"
a/k/a "Mack Frugul,"
CHRISTOPHER MICHAEL CROSS,
ANTHONY JEROME TURNER,
JA'DEL RAYNARD McFIELD,
KATRICE MARY ELLEN DAY,
BRIANNA NICOLE HOLLOWAY,
LAURA ELAINE TURNER,
SHANTELL LATRICE DANIELS,

and others known and unknown to the Grand Jury, committed various overt acts within the Northern

District of California, and elsewhere, including but not limited to the following:

January 27, 2011

1.    On or about January 26, 2011, defendant DAY used a credit or debit card in her name ending in X-9427 to purchase a ticket in her name to fly on Hawaiian Airlines from Oakland to Honolulu on January 27, 2011, with a return flight from Honolulu to Oakland on January 28, 2011.

2.    On or about January 27, 2011, defendant LUCKETT paid cash to purchase a ticket in his name to fly on Southwest Airlines from Oakland to Las Vegas on January 27, 2011.

3.    On or about January 27, 2011, defendant LUCKETT met with CROSS outside the Oakland Airport in the morning and LUCKETT gave CROSS a package containing narcotics.

4.    On or about January 27, 2011, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

5.    On or about January 27, 2011, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

6.    On or about January 27, 2011, defendant CROSS met with LUCKETT, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LUCKETT with the package containing narcotics.

7.    On or about January 27, 2011, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

8.    On or about January 27, 2011, defendant LUCKETT met DAY, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

9.    On or about January 27, 2011, defendant DAY boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

10.    On or about January 27, 2011, defendant DAY flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

1    11.    On or about January 27, 2011, defendant DAY traveled to a hotel in Honolulu, Hawaii,
2  and met with an individual in her hotel room and gave him the package containing narcotics that she had
3  transported in her carry-on luggage.

4    12.    On or about January 28, 2011, defendant DAY flew back to Northern California from
5  Honolulu.

6    March 31, 2011

7    13.    On or about March 30, 2011, defendant DAY used a credit or debit card ending in X-
8  1658 to purchase a ticket in her name to fly on Hawaiian Airlines from Oakland to Honolulu on March
9  31, 2011, with a return flight from Honolulu to Oakland on April 1, 2011

10    14.    On or about March 30, 2011, defendant LUCKETT used a credit or debit card in the
11  name of defendant DAY ending in X-1658 to purchase a ticket in his name to fly on Southwest Airlines
12  from Oakland to Las Vegas on March 31, 2011.

13    15.    On or about March 31, 2011, defendant LUCKETT met with CROSS outside the airport
14  in the morning and LUCKETT gave CROSS a package containing narcotics.

15    16.    On or about March 31, 2011, defendant CROSS brought the package of narcotics that he
16  had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass
17  through a TSA security screening checkpoint.

18    17.    On or about March 31, 2011, defendant CROSS, while in possession of the package
19  containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued
20  access code.

21    18.    On or about March 31, 2011, defendant CROSS met with LUCKETT, who had already
22  passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided
23  LUCKETT with the package containing narcotics.

24    19.    On or about March 31, 2011, defendant CROSS traveled from the Passenger Terminal to
25  the AOA using his Port of Oakland-issued security badge.

26    20.    On or about March 31, 2011, defendant LUCKETT met DAY, who had already passed
27  through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the
28  package containing narcotics which she then placed in her carry-on luggage.

SUPERSEDING INDICTMENT                      8

21.     On or about March 31, 2011, defendant DAY boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

22.     On or about March 31, 2011, defendant DAY flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

23.     On or about March 31, 2011, defendant DAY traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

24.     On or about April 1, 2011, defendant DAY flew back to Northern California from Honolulu.

May 19, 2011

25.     On or about May 18, 2011, defendant LUCKETT used a credit or debit card in his name ending in X-9103 to purchase a ticket for defendant DAY to fly on Hawaiian Airlines from Oakland to Honolulu on May 19, 2011, with a return flight from Honolulu to Oakland on May 20, 2011.

26.     On or about May 19, 2011, defendant LUCKETT used a refund from a prior unused flight to obtain a ticket in his name to fly on Southwest Airlines from Oakland to Las Vegas.

27.     On or about May 19, 2011, defendant LUCKETT met with CROSS outside the airport and LUCKETT gave CROSS a package containing narcotics.

28.     On or about May 19, 2011, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

29.     On or about May 19, 2011, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

30.     On or about May 19, 2011, defendant CROSS met with LUCKETT, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LUCKETT with the package containing narcotics.

1  31.  On or about May 19, 2011, defendant CROSS traveled from the Passenger Terminal to

2  the AOA using his Port of Oakland-issued security badge.

3  32.  On or about May 19, 2011, defendant LUCKETT met DAY, who had already passed

4  through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the

5  package containing narcotics which she then placed in her carry-on luggage.

6  33.  On or about May 19, 2011, defendant DAY boarded an outbound Hawaiian Airlines

7  aircraft with baggage that had not been submitted to inspection and screening and which contained

8  narcotics.

9  34.  On or about May 19, 2011, defendant LUCKETT did not board his flight to Las Vegas

10  and instead left the airport.

11  35.  On or about May 19, 2011, defendant DAY flew to Honolulu, Hawaii, with unscreened

12  and uninspected baggage containing narcotics.

13  36.  On or about May 19, 2011, defendant DAY traveled to a hotel in Honolulu, Hawaii, and

14  met with an individual in her hotel room and gave him the package containing narcotics that she had

15  transported in her carry-on luggage.

16  37.  On or about May 20, 2011, defendant DAY flew back to Northern California from

17  Honolulu.

18  July 21, 2011

19  38.  On or about July 21, 2011, defendant DAY used a credit or debit card in her name ending

20  in X-9427 to purchase a ticket in her name to fly on Hawaiian Airlines from Oakland to Honolulu on

21  July 21, 2011, with a return flight from Honolulu to Oakland on July 22, 2011.

22  39.  On or about July 21, 2011, defendant LUCKETT paid cash to purchase a ticket in his

23  name to fly on Southwest Airlines from Oakland to Las Vegas on July 21, 2011.

24  40.  On or about July 21, 2011, defendant LUCKETT met with CROSS outside the airport on

25  the morning of July 21, 2011, and LUCKETT gave CROSS a package containing narcotics.

26  41.  On or about July 21, 2011, defendant CROSS brought the package of narcotics that he

27  had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass

28  through a TSA security screening checkpoint.

SUPERSEDING INDICTMENT                    10

42.     On or about July 21, 2011, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

43.     On or about July 21, 2011, defendant CROSS met with LUCKETT, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LUCKETT with the package containing narcotics.

44.     On or about July 21, 2011, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

45.     On or about July 21, 2011, defendant LUCKETT met DAY, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

46.     On or about July 21, 2011, defendant DAY boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

47.     On or about July 21, 2011, defendant LUCKETT did not board his flight to Las Vegas and instead left the airport.

48.     On or about July 21, 2011, defendant DAY flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

49.     On or about July 21, 2011, defendant DAY traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

50.     On or about July 22, 2011, defendant DAY flew back to Oakland from Honolulu.

August 18, 2011

51.     On or about August 18, 2011, defendant LUCKETT used a credit or debit card in his name ending in X-3459 to purchase a ticket for defendant DAY to fly on Hawaiian Airlines from Oakland to Honolulu on August 18, 2011, with a return flight from Honolulu to Oakland on August 19, 2011.

52.     On or about August 18, 2011, defendant LUCKETT paid cash to purchase a ticket in his name to fly on Southwest Airlines from Oakland to Reno on August 18, 2011.

53.     On or about August 18, 2011, defendant LUCKETT met with CROSS outside the airport on the morning of August 18, 2011, and LUCKETT gave CROSS a package containing narcotics.

54.     On or about August 18, 2011, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

55.     On or about August 18, 2011, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

56.     On or about August 18, 2011, defendant CROSS met with LUCKETT, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LUCKETT with the package containing narcotics.

57.     On or about August 18, 2011, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

58.     On or about August 18, 2011, defendant LUCKETT met DAY, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

59.     On or about August 18, 2011, defendant DAY boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

60.     On or about August 18, 2011, defendant LUCKETT did not board his flight to Reno and instead left the airport.

61.     On or about August 18, 2011, defendant DAY flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

62.     On or about August 18, 2011, defendant DAY traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

1      63.     On or about August 19, 2011, defendant DAY flew back to Northern California from

2  Honolulu.

3       November 18, 2011

4      64.     On or about November 18, 2011, defendant LEWIS used a credit or debit card in his

5  name ending in X-6152 to purchase a ticket for defendant DAY to fly on Hawaiian Airlines from

6  Oakland to Honolulu on November 18, 2011, with a return flight from Honolulu to Oakland on

7  November 19, 2011.

8      65.     On or about November 18, 2011, defendant LUCKETT used a refund from his unused

9  August 18, 2011, flight to obtain a ticket in his name to fly on Southwest Airlines from Oakland to Los

10  Angeles on November 18, 2011.

11      66.     On or about November 18, 2011, defendant LUCKETT met with CROSS outside the

12  airport on the morning of November 18, 2011, and LUCKETT gave CROSS a package containing

13  narcotics.

14      67.     On or about November 18, 2011, defendant CROSS brought the package of narcotics that

15  he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not

16  pass through a TSA security screening checkpoint.

17      68.     On or about November 18, 2011, defendant CROSS, while in possession of the package

18  containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued

19  access code.

20      69.     On or about November 18, 2011, defendant CROSS met with LUCKETT, who had

21  already passed through the TSA security screening checkpoint, inside the Passenger Terminal and

22  provided LUCKETT with the package containing narcotics.

23      70.     On or about November 18, 2011, defendant CROSS traveled from the Passenger

24  Terminal to the AOA using his Port of Oakland-issued security badge.

25      71.     On or about November 18, 2011, defendant LUCKETT met DAY, who had already

26  passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her

27  with the package containing narcotics which she then placed in her carry-on luggage.

28

SUPERSEDING INDICTMENT          13

72.     On or about November 18, 2011, defendant DAY boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

73.     On or about November 18, 2011, defendant LUCKETT did not board his flight to Los Angeles and instead left the airport.

74.     On or about November 18, 2011, defendant DAY flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

75.     On or about November 18, 2011, defendant DAY traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

76.     On or about November 19, 2011, defendant DAY flew back to Northern California from Honolulu.

December 7, 2011

77.     On or about December 6, 2011, defendant LUCKETT used a credit or debit card in his name ending in X-9276 to purchase a ticket for defendant DAY to fly on Hawaiian Airlines from Oakland to Honolulu on December 7, 2011, with a return flight from Honolulu to Oakland on December 8, 2011.

78.     On or about December 7, 2011, defendant LEWIS paid cash to purchase a ticket in his name to fly on Southwest Airlines from Oakland to Los Angeles on December 7, 2011.

79.     On or about December 7, 2011, defendant LUCKETT met with CROSS outside the airport on the morning of December 7, 2011, and LUCKETT gave CROSS a package containing narcotics.

80.     On or about December 7, 2011, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

81.     On or about December 7, 2011, CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

82.     On or about December 7, 2011, defendant CROSS met with LEWIS, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LEWIS with the package containing narcotics.

83.     On or about December 7, 2011, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

84.     On or about December 7, 2011, defendant LEWIS met DAY, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

85.     On or about December 7, 2011, defendant DAY boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

86.     On or about December 7, 2011, defendant LEWIS did not board his flight to Los Angeles and instead left the airport.

87.     On or about December 7, 2011, defendant DAY flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

88.     On or about December 7, 2011, defendant DAY traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

89.     On or about December 8, 2011, defendant DAY flew back to Northern California from Honolulu.

<u>January 4, 2012</u>

90.     On or about December 28, 2011, defendant DAY used a credit or debit card in her name ending in X-6608 to purchase a ticket in her name to fly on Hawaiian Airlines from Oakland to Honolulu on January 4, 2012, with a return flight from Honolulu to Oakland on January 6, 2012.

91.     On or about January 3, 2012, defendant LEWIS used a refund from a previous unused flight to obtain a ticket in his name to fly on Southwest Airlines from Oakland to Los Angeles on January 4, 2012.

92.    On or about January 4, 2012, defendant LUCKETT met with CROSS outside the airport on the morning of January 4, 2012, and LUCKETT gave CROSS a package containing narcotics.

93.    On or about January 4, 2012, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

94.    On or about January 4, 2012, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

95.    On or about January 4, 2012, defendant CROSS met with LEWIS, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LEWIS with the package containing narcotics.

96.    On or about January 4, 2012, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

97.    On or about January 4, 2012, defendant LEWIS met DAY, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

98.    On or about January 4, 2012, defendant DAY boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

99.    On or about January 4, 2012, defendant LEWIS did not board his flight to Los Angeles and instead left the airport.

100.    On or about January 4, 2012, defendant DAY flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

101.    On or about January 4, 2012, defendant DAY traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

102.    On or about January 6, 2012, defendant DAY flew back to Oakland from Honolulu.

February 23, 2012

103.     On or about February 23, 2012, defendant LUCKETT used a credit or debit card in his name ending in X-6319 to purchase a ticket for defendant DAY to fly on Hawaiian Airlines from Oakland to Honolulu on February 23, 2012, with a return flight from Honolulu to Oakland on February 24, 2011.

104.     On or about February 23, 2012, defendant LEWIS used a refund from a prior unused flight to obtain a ticket in his name to fly on Southwest Airlines from Oakland to Reno on February 23, 2012.

105.     On or about February 23, 2012, defendant LUCKETT met with CROSS outside the airport on the morning of February 24, 2012, and LUCKETT gave CROSS a package containing narcotics.

106.     On or about February 23, 2012, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

107.     On or about February 23, 2012, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

108.     On or about February 23, 2012, defendant CROSS met with LEWIS, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LEWIS with the package containing narcotics.

109.     On or about February 23, 2012, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

110.     On or about February 23, 2012, defendant LEWIS met DAY, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

111.     On or about February 23, 2012, defendant DAY boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

112.    On or about February 23, 2012, defendant LEWIS did not board his flight to Reno and instead left the airport.

113.    On or about February 23, 2012, defendant DAY flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

114.    On or about February 23, 2012, defendant DAY traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

115.    On or about February 24, 2012, defendant DAY flew back to Northern California from Honolulu.

March 9, 2012

116.    On or about March 8, 2012, defendant LUCKETT used a credit or debit card in his name ending in X-6319 to purchase a ticket for defendant DAY to fly on Hawaiian Airlines from Oakland to Honolulu on March 9, 2012, with a return flight from Honolulu to Oakland on March 10, 2012.

117.    On or about March 9, 2012, defendant LEWIS used a refund from a prior unused flight to obtain a ticket in his name to fly on Southwest Airlines from Oakland to Reno on March 9, 2012.

118.    On or about March 9, 2012, defendant LUCKETT met with CROSS outside the airport on the morning of March 9, 2012, and LUCKETT gave CROSS a package containing narcotics.

119.    On or about March 9, 2012, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

120.    On or about March 9, 2012, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

121.    On or about March 9, 2012, defendant CROSS met with LEWIS, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LEWIS with the package containing narcotics.

122.    On or about March 9, 2012, defendant LEWIS met DAY, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the

SUPERSEDING INDICTMENT                    18

1   package containing narcotics which she then placed in her carry-on luggage.

2      123.    On or about March 9, 2012, defendant DAY boarded an outbound Hawaiian Airlines

3 aircraft with baggage that had not been submitted to inspection and screening and which contained

4 narcotics.

5      124.    On or about March 9, 2012, defendant LEWIS did not board his flight to Reno and

6 instead left the airport.

7      125.    On or about March 9, 2012, defendant DAY flew to Honolulu, Hawaii, with unscreened

8 and uninspected baggage containing narcotics.

9      126.    On or about March 9, 2012, defendant DAY traveled to a hotel in Honolulu, Hawaii, and

10 met with an individual in her hotel room and gave him the package containing narcotics that she had

11 transported in her carry-on luggage.

12      127.    On or about March 10, 2012, defendant DAY flew back to Northern California from

13 Honolulu.

14      <u>June 8, 2012</u>

15      128.    On or about June 8, 2012, LUCKETT and/or a co-conspirator known to the grand jury

16 obtained a ticket in the co-conspirator's name for her to fly on Hawaiian Airlines from Oakland to

17 Honolulu on June 8, 2012, with a return flight from Honolulu to Oakland on June 9, 2012.

18      129.    On or about June 8, 2012, defendant LUCKETT used a credit or debit card in his name

19 ending in X-5912 to purchase a ticket in his name to fly on Southwest Airlines from Oakland to Los

20 Angeles on June 8, 2012.

21      130.    On or about June 8, 2012, defendant LUCKETT met with CROSS outside the airport in

22 the morning and LUCKETT gave CROSS a package containing narcotics.

23      131.    On or about June 8, 2012, defendant CROSS brought the package of narcotics that he had

24 received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass

25 through a TSA security screening checkpoint.

26      132.    On or about June 8, 2012, defendant CROSS, while in possession of the package

27 containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued

28 access code.

133.    On or about June 8, 2012, defendant CROSS met with LUCKETT, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LUCKETT with the package containing narcotics.

134.    On or about June 8, 2012, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

135.    On or about June 8, 2012, defendant LUCKETT met with a co-conspirator known to the grand jury, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

136.    On or about June 8, 2012, the co-conspirator known to the grand jury boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

137.    On or about June 8, 2012, the co-conspirator known to the grand jury flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

138.    On or about June 8, 2012, the co-conspirator known to the grand jury traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

139.    On or about June 9, 2012, the co-conspirator known to the grand jury flew back to Northern California from Honolulu.

August 22, 2012

140.    On or about August 20, 2012, a co-conspirator known to the grand jury used a credit or debit card ending in X-6837 to purchase a ticket in her name to fly on Hawaiian Airlines from Oakland to Honolulu on August 22, 2012, with a return flight from Honolulu to Oakland on August 23, 2012.

141.    On or about August 22, 2012, defendant A. TURNER paid cash to purchase a ticket in his name to fly on Southwest Airlines from Oakland to Reno on August 22, 2012.

142.    On or about August 22, 2012, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

143. On or about August 22, 2012, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

144. On or about August 22, 2012, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

145. On or about August 22, 2012, defendant CROSS met with A. TURNER, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided A. TURNER with the package containing narcotics.

146. On or about August 22, 2012, defendant A. TURNER met with a co-conspirator known to the grand jury, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

147. On or about August 22, 2012, the co-conspirator known to the grand jury boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

148. On or about August 22, 2012, defendant A. TURNER did not board his flight to Reno and instead left the airport.

149. On or about August 22, 2012, the co-conspirator known to the grand jury flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

150. On or about August 22, 2012, the co-conspirator known to the grand jury traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

151. On or about August 23, 2012, the co-conspirator known to the grand jury flew back to Northern California from Honolulu.

January 24, 2013

152. On or about January 23, 2013, defendant LUCKETT used a credit or debit card in his name ending in X-6641 to purchase a ticket for defendant DAY to fly on Alaska Airlines from Oakland

to Honolulu on January 24, 2013, with a return flight from Honolulu to Oakland on January 25, 2013.

153.    On or about January 24, 2013, defendant LUCKETT used a refund from a previously unused flight to obtain a ticket in his name to fly on Southwest Airlines from Oakland to Los Angeles on January 24, 2013.

154.    On or about January 24, 2013, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

155.    On or about January 24, 2013, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

156.    On or about January 24, 2013, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

157.    On or about January 24, 2013, defendant CROSS met with LUCKETT, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LUCKETT with the package containing narcotics.

158.    On or about January 24, 2013, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

159.    On or about January 24, 2013, defendant LUCKETT met DAY, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

160.    On or about January 24, 2013, defendant DAY boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

161.    On or about January 24, 2013, defendant LUCKETT did not board his flight to Los Angeles and instead left the airport.

162.    On or about January 24, 2013, defendant DAY flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

163.    On or about January 24, 2013, defendant DAY traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

164.    On or about January 25, 2013, defendant DAY flew back to Northern California from Honolulu.

April 4, 2013

165.    On or about April 1, 2013, a co-conspirator known to the grand jury used a credit or debit card ending in X-6837 to purchase a ticket in her name to fly on Alaska Airlines from Oakland to Honolulu on April 4, 2013, with a return flight from Honolulu to Oakland on April 5, 2013.

166.    On or about April 4, 2013, defendant LUCKETT and/or a co-conspirator known to the grand jury used a credit or debit card ending in X-8858 to purchase a ticket in his name to fly on Southwest Airlines from Oakland to Los Angeles on April 4, 2013.

167.    On or about April 4, 2013, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

168.    On or about April 4, 2013, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

169.    On or about April 4, 2013, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

170.    On or about April 4, 2013, defendant CROSS met with LUCKETT, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LUCKETT with the package containing narcotics.

171.    On or about April 4, 2013, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

172.    On or about April 4, 2013, defendant LUCKETT met with a co-conspirator known to the grand jury, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on

luggage.

173.     On or about April 4, 2013, the co-conspirator known to the grand jury boarded an outbound Alaska Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

174.     On or about April 4, 2013, the co-conspirator known to the grand jury flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

175.     On or about April 4, 2013, the co-conspirator known to the grand jury traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

176.     On or about April 5, 2013, the co-conspirator known to the grand jury flew back to Northern California from Honolulu.

May 8, 2013

177.     On or about May 6, 2013, defendant LUCKETT obtained a ticket in the name of a co-conspirator known to the grand jury for her to fly to on Alaska Airlines from Oakland to Honolulu on May 8, 2013, with a return flight from Honolulu to Oakland on May 9, 2013.

178.     On or about May 8, 2013, defendant LUCKETT used a credit or debit card in his name ending in X-6824 to purchase a ticket for A. TURNER to fly on Southwest Airlines from Oakland to Los Angeles on May 8, 2013.

179.     On or about May 8, 2013, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

180.     On or about May 8, 2013, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

181.     On or about May 8, 2013, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

182.     On or about May 8, 2013, defendant CROSS met with A. TURNER, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided A.

SUPERSEDING INDICTMENT                    24

TURNER with the package containing narcotics.

183.    On or about May 8, 2013, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

184.    On or about May 8, 2013, defendant A. TURNER met with a co-conspirator known to the grand jury, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

185.    On or about May 8, 2013, the co-conspirator known to the grand jury boarded an outbound Alaska Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

186.    On or about May 8, 2013, the co-conspirator known to the grand jury flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

187.    On or about May 8, 2013, the co-conspirator known to the grand jury traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

188.    On or about May 9, 2013, the co-conspirator known to the grand jury flew back to Northern California from Honolulu.

May 9, 2013

189.    On or about May 8, 2013, defendant LUCKETT used a credit or debit card in his name ending in X-6824 to purchase a ticket for defendant DAY to fly on Hawaiian Airlines from Oakland to Maui on May 9, 2013, with a return flight from Maui to Oakland on May 10, 2013.

190.    On or about May 9, 2013, defendant LUCKETT used a credit or debit card in his name ending in X-6824 to purchase a ticket in his name to fly on Southwest Airlines from Oakland to Los Angeles on May 9, 2013.

191.    On or about May 9, 2013, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

192.    On or about May 9, 2013, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass

1  through a TSA security screening checkpoint.

2      193.    On or about May 9, 2013, defendant CROSS, while in possession of the package

3  containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued

4  security badge or access code.

5      194.    On or about May 9, 2013, defendant CROSS met with LUCKETT, who had already

6  passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided

7  LUCKETT with the package containing narcotics.

8      195.    On or about May 9, 2013, defendant LUCKETT met DAY, who had already passed

9  through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the

10  package containing narcotics which she then placed in her carry-on luggage.

11      196.    On or about May 9, 2013, defendant DAY boarded an outbound Hawaiian Airlines

12  aircraft with baggage that had not been submitted to inspection and screening and which contained

13  narcotics.

14      197.    On or about May 9, 2013, defendant DAY flew to Honolulu, Hawaii, with unscreened

15  and uninspected baggage containing narcotics.

16      198.    On or about May 9, 2013, defendant DAY traveled to a hotel in Honolulu, Hawaii, and

17  met with an individual in her hotel room and gave him the package containing narcotics that she had

18  transported in her carry-on luggage.

19      199.    On or about May 10, 2013, defendant DAY flew back to Oakland from Maui.

20      <u>June 13, 2013</u>

21      200.    On or about June 13, 2013, a co-conspirator known to the grand jury used a credit or

22  debit card in her name ending in X-6837 to purchase a ticket in her name to fly on Hawaiian Airlines

23  from Oakland to Maui on June 13, 2013, with a return flight from Honolulu to Oakland on June 14,

24  2013.

25      201.    On or about June 13, 2013, a co-conspirator known to the grand jury used a credit or

26  debit card in her name ending in X-6837 to purchase a ticket for another co-conspirator known to the

27  grand jury, to fly on Hawaiian Airlines from Oakland to Honolulu on June 13, 2013, with a return flight

28  from Maui to Oakland on June 14, 2013.

202.   On or about June 13, 2013, defendant A. TURNER paid cash to purchase a ticket in his name to fly on Southwest Airlines from Oakland to Los Angeles on June 13, 2013.

203.   On or about June 13, 2013, defendant LUCKETT met with CROSS outside the airport on the morning of June 13, 2013, and LUCKETT gave CROSS two packages containing narcotics.

204.   On or about June 13, 2013, defendant CROSS brought the packages of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

205.   On or about June 13, 2013, defendant CROSS, while in possession of the packages containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

206.   On or about June 13, 2013, defendant CROSS met with A. TURNER, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided A. TURNER with the packages containing narcotics.

207.   On or about June 13, 2013, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

208.   On or about June 13, 2013, defendant A. TURNER met with two co-conspirators known to the grand jury, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided them with packages containing narcotics which they then placed in their carry-on luggage.

209.   On or about June 13, 2013, the co-conspirators known to the grand jury boarded their respective outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

210.   On or about June 13, 2013, defendant A. TURNER did not board his flight to Los Angeles and instead left the airport.

211.   On or about June 13, 2013, a co-conspirator known to the grand jury flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

SUPERSEDING INDICTMENT                    27

212.    On or about June 13, 2013, a co-conspirator known to the grand jury flew to Maui with unscreened and uninspected baggage containing narcotics.

213.    On or about June 13, 2013, a co-conspirator known to the grand jury traveled to a hotel in Honolulu and met with an individual in her hotel room and gave him a package containing narcotics that she had transported in her carry-on luggage.

214.    On or about June 13, 2013, a co-conspirator known to the grand jury traveled to a hotel in Maui and met with an individual in her hotel room and gave him a package containing narcotics that she had transported in her carry-on luggage.

215.    On or about June 14, 2013, a co-conspirator known to the grand jury flew back to Northern California from Honolulu.

216.    On or about June 14, 2013, a co-conspirator known to the grand jury flew back to Northern California from Maui.

July 11, 2013

217.    On or about July 8, 2013, LUCKETT used a credit or debit card in his name ending in X-6824 to purchase a ticket for a co-conspirator known to the grand jury to fly on Hawaiian Airlines from Oakland to Honolulu on July 11, 2013, with a return flight from Honolulu to Oakland on July 12, 2013.

218.    On or about July 11, 2013, defendant LUCKETT used a credit or debit card in his name ending in X-6824 to purchase a ticket to fly on Southwest Airlines from Oakland to Los Angeles to Reno on July 11, 2013.

219.    On or about July 11, 2013, defendant LUCKETT met with CROSS outside the airport on the morning of July 11, 2013, and LUCKETT gave CROSS a package containing narcotics.

220.    On or about July 11, 2013, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

221.    On or about July 11, 2013, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

222.     On or about July 11, 2013, defendant CROSS met with LUCKETT, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LUCKETT with the package containing narcotics.

223.     On or about July 11, 2013, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

224.     On or about July 11, 2013, defendant LUCKETT met with the co-conspirator with the reservation to fly to Hawaii, and who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

225.     The co-conspirator known to the grand jury boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

226.     The co-conspirator known to the grand jury flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

227.     The co-conspirator known to the grand jury traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

228.     On or about July 12, 2013, the co-conspirator known to the grand jury flew back to Oakland from Honolulu.

July 25, 2013

229.     On or about July 25, 2013, defendant LUCKETT and/or a co-conspirator known to the grand jury used a credit or debit card ending in X-1832 in the name of the co-conspirator known to the grand jury, to purchase a ticket for defendant DANIELS to fly on Hawaiian Airlines from Oakland to Honolulu on July 25, 2013, with a return flight from Honolulu to Oakland on July 26, 2013.

230.     On or about July 25, 2013, defendant A. TURNER paid cash to purchase a ticket to fly on Southwest Airlines from Oakland to Los Angeles to Reno on July 25, 2013.

231.     On or about July 25, 2013, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

232.     On or about July 25, 2013, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

233.     On or about July 25, 2013, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

234.     On or about July 25, 2013, defendant CROSS met A. TURNER, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided A. TURNER with the package containing narcotics.

235.     On or about July 25, 2013, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

236.     On or about July 25, 2013, defendant A. TURNER met with DANIELS, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

237.     On or about July 25, 2013, defendant DANIELS boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

238.     On or about July 25, 2013, defendant A. TURNER did not board his flight to Los Angeles and Reno and instead left the airport.

239.     On or about July 25, 2013, defendant DANIELS flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

240.     On or about July 25, 2013, defendant DANIELS traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

241.     On or about July 26, 2013, defendant DANIELS flew back to Northern California from Honolulu.

July 31, 2013

242.     On or about July 31, 2013, a co-conspirator known to the grand jury used a credit or debit card in her name ending in X-6837 to purchase a ticket to fly on Hawaiian Airlines from Oakland to Honolulu on July 31, 2013, with a return flight from Honolulu to Oakland on August 1, 2013.

243.     On or about July 31, 2013, a co-conspirator known to the grand jury used a credit or debit card in her name ending in X-6837 to purchase a ticket for A. TURNER to fly on Southwest Airlines from Oakland to Los Angeles on July 31, 2013.

244.     On or about July 31, 2013, defendant LUCKETT met with CROSS outside the airport on the morning of July 31, 2013, and LUCKETT gave CROSS a package containing narcotics.

245.     On or about July 31, 2013, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

246.     On or about July 31, 2013, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

247.     On or about July 31, 2013, defendant CROSS met with A. TURNER, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided the co-conspirator with the package containing narcotics.

248.     On or about July 31, 2013, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

249.     On or about July 31, 2013, defendant A. TURNER met with the co-conspirator with the reservation to fly to Hawaii, and who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

250.     On or about July 31, 2013, a co-conspirator known to the grand jury boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

251.    On or about July 31, 2013, defendant A. TURNER did not board his flight to Los Angeles and instead left the airport.

252.    On or about July 31, 2013, the co-conspirator known to the grand jury flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

253.    On or about July 31, 2013, the co-conspirator known to the grand jury traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

254.    On or about August 1, 2013, the co-conspirator known to the grand jury flew back to Northern California from Honolulu.

September 9, 2013

255.    On or about September 9, 2013, defendant LUCKETT and/or a co-conspirator known to the grand jury used a credit or debit card ending in X-1832 in the name of the co-conspirator known to the grand jury to purchase a ticket for defendant L. TURNER to fly on Hawaiian Airlines from Oakland to Honolulu on September 9, 2013, with a return flight from Honolulu to Oakland on September 10, 2013.

256.    On or about September 9, 2013, defendant LUCKETT used a credit or debit card ending in X-1832 in the name of a co-conspirator known to the grand jury to purchase a ticket for A. TURNER to fly on Southwest Airlines from Oakland to Los Angeles on September 9, 2013.

257.    On or about September 9, 2013, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

258.    Defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

259.    On or about September 9, 2013, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

260.    On or about September 9, 2013, defendant CROSS met with A. TURNER, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and

1   provided the co-conspirator with the package containing narcotics.

2       261.    On or about September 9, 2013, defendant CROSS traveled from the Passenger Terminal

3   to the AOA using his Port of Oakland-issued security badge.

4       262.    On or about September 9, 2013, defendant A. TURNER met with defendant L.

5   TURNER, and who had already passed through the TSA security screening checkpoint, inside the

6   Passenger Terminal and provided her with the package containing narcotics which she then placed in her

7   carry-on luggage.

8       263.    On or about September 9, 2013, defendant L. TURNER boarded an outbound Hawaiian

9   Airlines aircraft with baggage that had not been submitted to inspection and screening and which

10  contained narcotics.

11      264.    On or about September 9, 2013, defendant A. TURNER did not board his flight to Los

12  Angeles and instead left the airport.

13      265.    On or about September 9, 2013, defendant L. TURNER flew to Honolulu, Hawaii, with

14  unscreened and uninspected baggage containing narcotics.

15      266.    On or about September 9, 2013, defendant L. TURNER traveled to a hotel in Honolulu,

16  Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that

17  she had transported in her carry-on luggage.

18      267.    On or about September 10, 2013, defendant L. TURNER flew back to Oakland from

19  Honolulu.

20      September 12, 2013

21      268.    On or about September 9, 2013, defendant LUCKETT and/or a co-conspirator known to

22  the grand jury used a credit or debit card ending in X-1832 in the name of the co-conspirator known to

23  the grand jury to purchase a ticket for a different co-conspirator known to the grand jury to fly on

24  Hawaiian Airlines from Oakland to Honolulu on September 12, 2013, with a return flight from Honolulu

25  to Oakland on September 13, 2013.

26      269.    On or about September 12, 2013, defendant LUCKETT used a credit or debit card ending

27  in X-1832 in the name of a co-conspirator known to the grand jury to purchase a ticket for a co-

28  conspirator known to the grand jury to fly on Southwest Airlines from Oakland to Los Angeles on

SUPERSEDING INDICTMENT        33

1  September 12, 2013.

2      270.    On or about September 12, 2013, defendant LUCKETT met with CROSS outside the

3  airport in the morning of and LUCKETT gave CROSS a package containing narcotics.

4      271.    On or about September 12, 2013, defendant CROSS brought the package of narcotics that

5  he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not

6  pass through a TSA security screening checkpoint.

7      272.    On or about September 12, 2013, defendant CROSS, while in possession of the package

8  containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued

9  security badge or access code.

10     273.    On or about September 12, 2013, defendant CROSS met with a co-conspirator known to

11 the grand jury, who had already passed through the TSA security screening checkpoint, inside the

12 Passenger Terminal and provided the co-conspirator with the package containing narcotics.

13     274.    On or about September 12, 2013, defendant CROSS traveled from the Passenger

14 Terminal to the AOA using his Port of Oakland-issued security badge.

15     275.    On or about September 12, 2013, the co-conspirator with the reservation to fly to Los

16 Angeles on Southwest Airlines met with the co-conspirator with the reservation to fly to Hawaii, and

17 who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal

18 and provided her with the package containing narcotics which she then placed in her carry-on luggage.

19     276.    On or about September 12, 2013, the co-conspirator known to the grand jury boarded an

20 outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and

21 screening and which contained narcotics.

22     277.    On or about September 12, 2013, the co-conspirator known to the grand jury with a

23 reservation to fly to Los Angeles did not board his flight and instead left the airport.

24     278.    On or about September 12, 2013, the co-conspirator known to the grand jury flew to

25 Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

26     279.    On or about September 12, 2013, the co-conspirator known to the grand jury traveled to a

27 hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package

28 containing narcotics that she had transported in her carry-on luggage.

280.    On or about September 13, 2013, the co-conspirator known to the grand jury flew back to Oakland from Honolulu.

October 9, 2013

281.    On or about October 8, 2013, a co-conspirator known to the grand jury used a credit or debit card ending in X-6837 in her name to purchase a ticket for a different co-conspirator known to the grand jury to fly on Hawaiian Airlines from Oakland to Maui to Honolulu on October 9, 2013, with a return flight from Honolulu to Oakland on October 10, 2013.

282.    On or about October 9, 2013, defendant LUCKETT used a credit or debit card ending in X-1832 in the name of a co-conspirator known to the grand jury to purchase a ticket for LUCKETT to fly on Southwest Airlines from Oakland to Los Angeles on October 9, 2013.

283.    On or about October 9, 2013, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

284.    On or about October 9, 2013, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

285.    On or about October 9, 2013, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

286.    On or about October 9, 2013, defendant CROSS met LUCKETT, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LUCKETT with the package containing narcotics.

287.    On or about October 9, 2013, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

288.    On or about October 9, 2013, defendant LUCKETT met with the co-conspirator known to the grand jury with the reservation to fly to Hawaii, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

289.   On or about October 9, 2013, the co-conspirator known to the grand jury boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

290.   On or about October 9, 2013, defendant LUCKETT did not board his flight to Los Angeles and instead left the airport.

291.   On or about October 9, 2013, the co-conspirator known to the grand jury flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

292.   On or about October 9, 2013, the co-conspirator known to the grand jury traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

293.   On or about October 10, 2013, the co-conspirator known to the grand jury flew back to Northern California from Honolulu.

November 18, 2013

294.   On or about November 18, 2013, defendant LUCKETT and/or a co-conspirator known to the grand jury used a credit or debit card ending in X-1832 in the name of the co-conspirator known to the grand jury to purchase a ticket for a different co-conspirator known to the grand jury to fly on Hawaiian Airlines from Oakland to Honolulu on November 18, 2013, with a return flight from Honolulu to Oakland on November 19, 2013.

295.   On or about November 18, 2013, defendant LUCKETT used a credit or debit card ending in X-1832 in the name of a co-conspirator known to the grand jury to purchase a ticket for defendant LEWIS to fly on Southwest Airlines from Oakland to Los Angeles on November 18, 2013.

296.   On or about November 18, 2013, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

297.   On or about November 18, 2013, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

298.   On or about November 18, 2013, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued

1   access code.

2       299.   On or about November 18, 2013, defendant CROSS met LEWIS, who had already passed

3   through the TSA security screening checkpoint, inside the Passenger Terminal and provided LEWIS

4   with the package containing narcotics.

5       300.   On or about November 18, 2013, defendant CROSS traveled from the Passenger

6   Terminal to the AOA using his Port of Oakland-issued security badge.

7       301.   On or about November 18, 2013, defendant LEWIS met with the co-conspirator known

8   to the grand jury with the reservation to fly to Hawaii, who had already passed through the TSA security

9   screening checkpoint, inside the Passenger Terminal and provided her with the package containing

10   narcotics which she then placed in her carry-on luggage.

11       302.   On or about November 18, 2013, a co-conspirator known to the grand jury boarded an

12   outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and

13   screening and which contained narcotics.

14       303.   On or about November 18, 2013, defendant LEWIS did not board his flight to Los

15   Angeles and instead left the airport.

16       304.   On or about November 18, 2013, the co-conspirator known to the grand jury flew to

17   Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

18       305.   On or about November 18, 2013, the co-conspirator known to the grand jury traveled to a

19   hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package

20   containing narcotics that she had transported in her carry-on luggage.

21       306.   On or about November 19, 2013, the co-conspirator known to the grand jury flew back to

22   Oakland from Honolulu.

23       December 2, 2013

24       307.   On or about December 2, 2013, defendant LUCKETT and/or a co-conspirator known to

25   the grand jury used a credit or debit card ending in X-1832 in the name of the co-conspirator known to

26   the grand jury to purchase a ticket for a different co-conspirator known to the grand jury to fly on Alaska

27   Airlines from Oakland to Honolulu on December 2, 2013, with a return flight from Honolulu to Oakland

28   on December 3, 2013.

308.     On or about December 2, 2013, defendant LUCKETT used a credit or debit card ending in X-1832 in the name of a co-conspirator known to the grand jury to purchase a ticket for defendant LEWIS to fly on Southwest Airlines from Oakland to Los Angeles to Reno on December 2, 2013.

309.     On or about December 2, 2013, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

310.     On or about December 2, 2013, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

311.     On or about December 2, 2013, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

312.     On or about December 2, 2013, defendant CROSS met LEWIS, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LEWIS with the package containing narcotics.

313.     On or about December 2, 2013, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

314.     On or about December 2, 2013, defendant LEWIS met with the co-conspirator known to the grand jury with the reservation to fly to Hawaii, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

315.     The co-conspirator known to the grand jury boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

316.     On or about December 2, 2013, defendant LEWIS did not board his flight to Los Angeles and Reno and instead left the airport.

317.     On or about December 2, 2013, the co-conspirator known to the grand jury flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

318.    On or about December 2, 2013, the co-conspirator known to the grand jury traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

319.    On or about December 3, 2013, the co-conspirator known to the grand jury flew back to Oakland from Honolulu.

December 5, 2013

320.    On or about December 5, 2013, defendant LUCKETT and/or a co-conspirator known to the grand jury obtained a ticket for a different co-conspirator known to the grand jury to fly on Hawaiian Airlines from Oakland to Honolulu on December 5, 2013, with a return flight from Honolulu to Oakland on December 6, 2013.

321.    On or about December 5, 2013, defendant LUCKETT used a credit or debit card ending in X-1832 in the name of a co-conspirator known to the grand jury to purchase a ticket for defendant LEWIS to fly on Southwest Airlines from Oakland to Los Angeles on December 5, 2013.

322.    On or about December 5, 2013, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

323.    On or about December 5, 2013, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

324.    On or about December 5, 2013, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

325.    On or about December 5, 2013, defendant CROSS met LEWIS, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LEWIS with the package containing narcotics.

326.    On or about December 5, 2013, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

327.    On or about December 5, 2013, defendant LEWIS met with the co-conspirator known to the grand jury with the reservation to fly to Hawaii, who had already passed through the TSA security

SUPERSEDING INDICTMENT               39

screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

328.   On or about December 5, 2013, the co-conspirator known to the grand jury boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

329.   On or about December 5, 2013, defendant LEWIS did not board his flight to Los Angeles and instead left the airport.

330.   On or about December 5, 2013, the co-conspirator known to the grand jury flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

331.   On or about December 5, 2013, the co-conspirator known to the grand jury traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

332.   On or about December 6, 2013, the co-conspirator known to the grand jury flew back to Northern California from Honolulu.

<u>January 8, 2014</u>

333.   On or about January 7, 2014, defendant LUCKETT and/or a co-conspirator known to the grand jury used a credit or debit card ending in X-1832 in the name of the co-conspirator known to the grand jury to purchase a ticket for a different co-conspirator known to the grand jury to fly on Hawaiian Airlines from Oakland to Maui to Honolulu on January 8, 2014, with a return flight from Honolulu to Maui to Oakland on January 10, 2014.

334.   On or about January 8, 2014, defendant LUCKETT used a credit or debit card ending in X-1832 in the name of a co-conspirator known to the grand jury to purchase a ticket for defendant A. TURNER to fly on Southwest Airlines from Oakland to Los Angeles on January 8, 2014.

335.   On or about January 8, 2014, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

336.   On or about January 8, 2014, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

337.    On or about January 8, 2014, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

338.    On or about January 8, 2014, defendant CROSS met A. TURNER, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided A. TURNER with the package containing narcotics.

339.    On or about January 8, 2014, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

340.    On or about January 8, 2014, defendant A. TURNER met with the co-conspirator known to the grand jury with the reservation to fly to Hawaii, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

341.    The co-conspirator known to the grand jury boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

342.    On or about January 8, 2014, defendant A. TURNER did not board his flight to Los Angeles and instead left the airport.

343.    On or about January 8, 2014, the co-conspirator known to the grand jury flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

344.    On or about January 8, 2014, the co-conspirator known to the grand jury traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

345.    On or about January 8, 2014, before and after the flight to Hawaii, defendant LUCKETT communicated with defendants CROSS and A. TURNER via telephone to coordinate the smuggling of narcotics through the airport.

346.    On or about January 10, 2014, the co-conspirator known to the grand jury flew back to Northern California from Honolulu.

1    January 23, 2014

2    347.    On or about January 22, 2014, defendant LUCKETT and/or a co-conspirator known to

3    the grand jury used a credit or debit card ending in X-1832 in the name of the co-conspirator known to

4    the grand jury to purchase a ticket for a different co-conspirator known to the grand jury to fly on

5    Hawaiian Airlines from Oakland to Honolulu on January 23, 2014, with a return flight from Honolulu to

6    Oakland on January 24, 2014.

7    348.    On or about January 23, 2014, defendant LUCKETT used a credit or debit card ending in

8    X-1832 in the name of a co-conspirator known to the grand jury to purchase a ticket for defendant

9    LEWIS to fly on Southwest Airlines from Oakland to Los Angeles on January 23, 2014.

10   349.    On or about January 23, 2014, defendant LUCKETT met with CROSS outside the airport

11   in the morning and LUCKETT gave CROSS a package containing narcotics.

12   350.    On or about January 23, 2014, defendant CROSS brought the package of narcotics that he

13   had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass

14   through a TSA security screening checkpoint.

15   351.    On or about January 23, 2014, defendant CROSS, while in possession of the package

16   containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued

17   access code.

18   352.    On or about January 23, 2014, defendant CROSS met LEWIS, who had already passed

19   through the TSA security screening checkpoint, inside the Passenger Terminal and provided LEWIS

20   with the package containing narcotics.

21   353.    On or about January 23, 2014, defendant CROSS traveled from the Passenger Terminal

22   to the AOA using his Port of Oakland-issued security badge.

23   354.    On or about January 23, 2014, defendant LEWIS met with the co-conspirator known to

24   the grand jury with the reservation to fly to Hawaii, who had already passed through the TSA security

25   screening checkpoint, inside the Passenger Terminal and provided her with the package containing

26   narcotics which she then placed in her carry-on luggage.

27   355.    On or about January 23, 2014, the co-conspirator known to the grand jury boarded an

28   outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and

SUPERSEDING INDICTMENT                    42

1   screening and which contained narcotics.

2   356.   On or about January 23, 2014, defendant LEWIS did not board his flight to Los Angeles

3   and instead left the airport.

4   357.   On or about January 23, 2014, the co-conspirator known to the grand jury flew to

5   Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

6   358.   On or about January 23, 2014, the co-conspirator known to the grand jury traveled to a

7   hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package

8   containing narcotics that she had transported in her carry-on luggage.

9   359.   On or about January 23, 2014, before and after the flight to Hawaii, defendant

10   LUCKETT communicated with defendants CROSS and LEWIS, and co-conspirators known to the

11   grand jury, via telephone to coordinate the smuggling of narcotics through the airport.

12   360.   On or about January 24, 2014, the co-conspirator known to the grand jury flew back to

13   Northern California from Honolulu.

14   <u>January 30, 2014</u>

15   361.   On or about January 29, 2014, defendant LUCKETT and/or a co-conspirator known to

16   the grand jury used a credit or debit card ending in X-1832 in the name of the co-conspirator known to

17   the grand jury to purchase a ticket for a different co-conspirator known to the grand jury to fly on

18   Hawaiian Airlines from Oakland to Honolulu on January 30, 2014, with a return flight from Honolulu to

19   Oakland on January 31, 2014.

20   362.   On or about January 30, 2014, defendant LUCKETT used a credit or debit card ending in

21   X-1832 in the name of a co-conspirator known to the grand jury to purchase a ticket for defendant

22   LEWIS to fly on Southwest Airlines from Oakland to Los Angeles on January 30, 2014.

23   363.   On or about January 30, 2014, defendant LUCKETT met with CROSS outside the airport

24   in the morning and LUCKETT gave CROSS a package containing narcotics.

25   364.   On or about January 30, 2014, defendant CROSS brought the package of narcotics that he

26   had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass

27   through a TSA security screening checkpoint.

28

SUPERSEDING INDICTMENT                43

365.    On or about January 30, 2014, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

366.    On or about January 30, 2014, defendant CROSS met LEWIS, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LEWIS with the package containing narcotics.

367.    On or about January 30, 2014, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

368.    On or about January 30, 2014, defendant LEWIS met with the co-conspirator known to the grand jury with the reservation to fly to Hawaii, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

369.    On or about January 30, 2014, the co-conspirator known to the grand jury boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

370.    On or about January 30, 2014, defendant LEWIS did not board his flight to Los Angeles and instead left the airport.

371.    On or about January 30, 2014, the co-conspirator known to the grand jury flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

372.    On or about January 30, 2014, the co-conspirator known to the grand jury traveled to a hotel in Honolulu, Hawaii, and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

373.    On or about January 30, 2014, before and after the flight to Hawaii, defendant LUCKETT communicated with defendants CROSS, LEWIS, A. TURNER, and co-conspirators known to the grand jury, via telephone to coordinate the smuggling of narcotics through the airport.

374.    On or about January 30, 2014, the co-conspirator known to the grand jury flew back to Northern California from Honolulu.

February 6, 2014

375.    On or about February 5, 2014, defendant LUCKETT and/or a co-conspirator known to the grand jury used a credit or debit card ending in X-1832 in the name of the co-conspirator known to the grand jury to purchase a ticket for a different co-conspirator known to the grand jury to fly on Alaska Airlines from Oakland to Maui on February 6, 2014, with a return flight from Honolulu to Oakland on February 7, 2014.

376.    On or about February 6, 2014, defendant LUCKETT used a credit or debit card ending in X-5851 in the name of a co-conspirator known to the grand jury to purchase a ticket for defendant A. TURNER to fly on Southwest Airlines from Oakland to Los Angeles on February 6, 2014.

377.    On or about February 6, 2014, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

378.    On or about February 6, 2014, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

379.    On or about February 6, 2014, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

380.    On or about February 6, 2014, defendant CROSS met A. TURNER, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided A. TURNER with the package containing narcotics.

381.    On or about February 6, 2014, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

382.    On or about February 6, 2014, defendant LEWIS met with the co-conspirator known to the grand jury with the reservation to fly to Hawaii, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

383.    On or about February 6, 2014, the co-conspirator known to the grand jury boarded an outbound Alaska Airlines aircraft with baggage that had not been submitted to inspection and screening

1  and which contained narcotics.

2       384.    On or about February 6, 2014, defendant A. TURNER did not board his flight to Los

3  Angeles and instead left the airport.

4       385.    On or about February 6, 2014, the co-conspirator known to the grand jury flew to Maui

5  with unscreened and uninspected baggage containing narcotics.

6       386.    On or about February 6, 2014, the co-conspirator known to the grand jury traveled to a

7  hotel in Maui and met with an individual in her hotel room and gave him the package containing

8  narcotics that she had transported in her carry-on luggage.

9       387.    On or about February 6, 2014, before and after the flight to Hawaii, defendant

10  LUCKETT communicated with defendants CROSS, A. TURNER, and co-conspirators known to the

11  grand jury, via telephone to coordinate the smuggling of narcotics through the airport.

12       388.    On or about February 7, 2014, the co-conspirator known to the grand jury flew back to

13  Northern California from Honolulu.

14  <u>March 3, 2014</u>

15       389.    On or about February 27, 2014, defendant LUCKETT and/or a co-conspirator known to

16  the grand jury used a credit or debit card ending in X-1690 in the name of the co-conspirator known to

17  the grand jury to purchase a ticket for a different co-conspirator known to the grand jury to fly on

18  Hawaiian Airlines from Oakland to Honolulu on March 3, 2014, with a return flight from Honolulu to

19  Oakland on March 4, 2014.

20       390.    On or about March 1, 2014, a co-conspirator known to the grand jury used a credit or

21  debit card in her name ending in X-6837 to purchase a ticket in her name to fly on Hawaiian Airlines

22  from Oakland to Honolulu on March 3, 2014, with a return flight from Honolulu to Oakland on March

23  4, 2014.

24       391.    On or about March 2, 2014, defendant LEWIS used a credit or debit card ending in X-

25  4435 in the name of a co-conspirator known to the grand jury to purchase a ticket in his name to fly on

26  Southwest Airlines from Oakland to Los Angeles on March 3, 2014.

27       392.    On or about March 3, 2014, defendant LUCKETT met with CROSS outside the airport in

28  the morning and LUCKETT gave CROSS two packages containing narcotics.

393. On or about March 3, 2014, defendant CROSS brought the packages of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

394. On or about March 3, 2014, defendant CROSS, while in possession of the packages containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued security badge or access code.

395. On or about March 3, 2014, defendant CROSS met with LEWIS, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LEWIS with the packages containing narcotics.

396. On or about March 3, 2014, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

397. On or about March 3, 2014, defendant LEWIS met with two co-conspirators known to the grand jury, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided them with packages containing narcotics which they then placed in their carry-on luggage.

398. On or about March 3, 2014, the co-conspirators known to the grand jury boarded their outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

399. On or about March 3, 2014, defendant LEWIS did not board his flight to Los Angeles and instead left the airport.

400. On or about March 3, 2014, co-conspirators known to the grand jury flew to Honolulu, Hawaii, with unscreened and uninspected baggage containing narcotics.

401. On or about March 3, 2014, co-conspirators known to the grand jury traveled to a hotel in Honolulu and met with an individual in their hotel room and gave him packages containing narcotics that they had transported in their carry-on luggage.

402. On or about March 3, 2014, before and after the flight to Hawaii, defendant LUCKETT communicated with defendants CROSS, LEWIS, and co-conspirators known to the grand jury, via telephone to coordinate the smuggling of narcotics through the airport

SUPERSEDING INDICTMENT             47

403.    On or about March 3, 2014, co-conspirators known to the grand jury flew back to Northern California from Honolulu.

March 20, 2014

404.    On or about March 20, 2014, defendant LUCKETT and/or a co-conspirator known to the grand jury used a credit or debit card ending in X-1690 in the name of the co-conspirator known to the grand jury to purchase a ticket for a different co-conspirator known to the grand jury to fly on Hawaiian Airlines from Oakland to Honolulu on March 20, 2014, with a return flight from Honolulu to Oakland on March 21, 2014.

405.    On or about March 20, 2014, defendant LUCKETT used a credit or debit card ending in X-1690 in the name of a co-conspirator known to the grand jury to purchase a ticket for defendant LEWIS to fly on Southwest Airlines from Oakland to Los Angeles on March 20, 2014.

406.    On or about March 20, 2014, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

407.    On or about March 20, 2014, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

408.    On or about March 20, 2014, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

409.    On or about March 20, 2014, defendant CROSS met LEWIS, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided LEWIS with the package containing narcotics.

410.    On or about March 20, 2014, defendant LEWIS met with the co-conspirator known to the grand jury with the reservation to fly to Hawaii, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

411.    On or about March 20, 2014, the co-conspirator known to the grand jury boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and

SUPERSEDING INDICTMENT              48

screening and which contained narcotics.

412.   On or about March 20, 2014, defendant LEWIS did not board his flight to Los Angeles and instead left the airport.

413.   On or about March 20, 2014, the co-conspirator known to the grand jury flew to Honolulu with unscreened and uninspected baggage containing narcotics.

414.   On or about March 20, 2014, the co-conspirator known to the grand jury traveled to a hotel in Honolulu and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

415.   On or about March 20, 2014, before and after the flight to Hawaii, defendant LUCKETT communicated with defendants CROSS, A. TURNER, LEWIS, and co-conspirators known to the grand jury, via telephone to coordinate the smuggling of narcotics through the airport.

416.   On or about March 21, 2014, the co-conspirator known to the grand jury flew back to Northern California from Honolulu.

March 24, 2014

417.   On or about March 23, 2014, defendant LUCKETT and/or a co-conspirator known to the grand jury used a credit or debit card ending in X-1690 in the name of the co-conspirator known to the grand jury to purchase a ticket defendant L. TURNER to fly on Hawaiian Airlines from Oakland to Honolulu on March 24, 2014, with a return flight from Honolulu to Oakland on March 25, 2014.

418.   On or about March 24, 2014, defendant LUCKETT used a credit or debit card ending in X-1690 in the name of a co-conspirator known to the grand jury to purchase a ticket for defendant A. TURNER to fly on Southwest Airlines from Oakland to Los Angeles on March 24, 2014.

419.   On or about March 24, 2014, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

420.   On or about March 24, 2014, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

421.   On or about March 24, 2014, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued

SUPERSEDING INDICTMENT                    49

access code.

422.    On or about March 24, 2014, defendant CROSS met A. TURNER, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided A. TURNER with the package containing narcotics.

423.    On or about March 24, 2014, defendant A. TURNER met with defendant L. TURNER, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

424.    On or about March 24, 2014, defendant L. TURNER boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

425.    On or about March 24, 2014, defendant A. TURNER did not board his flight to Los Angeles and instead left the airport.

426.    On or about March 24, 2014, defendant L. TURNER flew to Honolulu with unscreened and uninspected baggage containing narcotics.

427.    On or about March 24, 2014, defendant L. TURNER traveled to a hotel in Honolulu and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

428.    On or about March 24, 2014, before and after the flight to Hawaii, defendant LUCKETT communicated with defendants CROSS, A. TURNER, L. TURNER, and co-conspirators known to the grand jury, via telephone to coordinate the smuggling of narcotics through the airport.

429.    On or about March 25, 2014, the co-conspirator known to the grand jury flew back to Northern California from Honolulu.

March 26, 2014

430.    On or about March 25, 2014, defendant LUCKETT and/or a co-conspirator known to the grand jury used a credit or debit card ending in X-1690 in the name of the co-conspirator known to the grand jury to purchase a ticket for a different co-conspirator known to the grand jury to fly on Hawaiian Airlines from Oakland to Maui on March 26, 2014, with a return flight from Maui to Oakland on March 27, 2014.

431.   On or about March 26, 2014, defendant LUCKETT used a credit or debit card ending in X-1690 in the name of a co-conspirator known to the grand jury to purchase a ticket for defendant A. TURNER to fly on Southwest Airlines from Oakland to Los Angeles on March 26, 2014.

432.   On or about March 26, 2014, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

433.   On or about March 26, 2014, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

434.   On or about March 26, 2014, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

435.   On or about March 26, 2014, defendant CROSS met A. TURNER, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided A. TURNER with the package containing narcotics.

436.   On or about March 26, 2014, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

437.   On or about March 26, 2014, defendant A. TURNER met with the co-conspirator known to the grand jury with the reservation to fly to Hawaii, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

438.   On or about March 26, 2014, the co-conspirator known to the grand jury boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

439.   On or about March 26, 2014, defendant A. TURNER did not board his flight to Los Angeles and instead left the airport.

440.   On or about March 26, 2014, the co-conspirator known to the grand jury flew to Maui with unscreened and uninspected baggage containing narcotics.

441.     On or about March 26, 2014, the co-conspirator known to the grand jury traveled to a hotel in Maui and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

442.     On or about March 26, 2014, before and after the flight to Hawaii, defendant LUCKETT communicated with defendants CROSS, A. TURNER, LEWIS, and co-conspirators known to the grand jury, via telephone to coordinate the smuggling of narcotics through the airport.

443.     On or about March 27, 2014, the co-conspirator known to the grand jury flew back to Northern California from Maui.

April 10, 2014

444.     On or about April 9, 2014, defendant LUCKETT and/or a co-conspirator known to the grand jury used a credit or debit card ending in X-1690 in the name of the co-conspirator known to the grand jury to purchase a ticket for a different co-conspirator known to the grand jury to fly on Alaska Airlines from Oakland to Honolulu on April 10, 2014, with a return flight from Honolulu to Oakland on April 11, 2014.

445.     On or about April 10, 2014, defendant LEWIS used a credit or debit card in his name ending in X-5007 to purchase a ticket for defendant A. TURNER to fly on Southwest Airlines from Oakland to Los Angeles on April 10, 2014.

446.     On or about April 10, 2014, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

447.     On or about April 10, 2014, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

448.     On or about April 10, 2014, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

449.     On or about April 10, 2014, defendant CROSS met A. TURNER, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided A. TURNER with the package containing narcotics.

450.    On or about April 10, 2014, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

451.    On or about April 10, 2014, defendant A. TURNER met with the co-conspirator known to the grand jury with the reservation to fly to Hawaii, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

452.    On or about April 10, 2014, the co-conspirator known to the grand jury boarded an outbound Alaska Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

453.    On or about April 10, 2014, defendant A. TURNER did not board his flight to Los Angeles and instead left the airport.

454.    On or about April 10, 2014, the co-conspirator known to the grand jury flew to Honolulu with unscreened and uninspected baggage containing narcotics.

455.    On or about April 10, 2014, the co-conspirator known to the grand jury traveled to a hotel in Honolulu and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

456.    On or about April 10, 2014, before and after the flight to Hawaii, defendant LUCKETT communicated with defendants CROSS, A. TURNER, LEWIS, and co-conspirators known to the grand jury, via telephone to coordinate the smuggling of narcotics through the airport.

457.    On or about April 10, 2014, the co-conspirator known to the grand jury flew back to Northern California from Honolulu.

April 24, 2014

458.    On or about April 24, 2014, defendant LUCKETT and/or a co-conspirator known to the grand jury used a credit or debit card ending in X-1690 in the name of the co-conspirator known to the grand jury to purchase a ticket for defendant HOLLOWAY to fly on Hawaiian Airlines from Oakland to Maui on April 24, 2014, with a return flight from Maui to Oakland on April 25, 2014.

459.    On or about April 24, 2014, defendant McFIELD obtained a ticket in his name to fly on Southwest Airlines from Oakland to Los Angeles on April 24, 2014.

460.    On or about April 24, 2014, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing narcotics.

461.    On or about April 24, 2014, defendant CROSS brought the package of narcotics that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

462.    On or about April 24, 2014, defendant CROSS, while in possession of the package containing narcotics, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

463.    On or about April 24, 2014, defendant CROSS met McFIELD, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided McFIELD with the package containing narcotics.

464.    On or about April 24, 2014, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

465.    On or about April 24, 2014, defendant McFIELD met with defendant HOLLOWAY, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing narcotics which she then placed in her carry-on luggage.

466.    On or about April 24, 2014, defendant HOLLOWAY boarded an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained narcotics.

467.    On or about April 24, 2014, defendant McFIELD did not board his flight to Los Angeles and instead left the airport.

468.    On or about April 24, 2014, defendant HOLLOWAY flew to Maui with unscreened and uninspected baggage containing narcotics.

469.    On or about April 24, 2014, defendant HOLLOWAY traveled to a hotel in Maui and met with an individual in her hotel room and gave him the package containing narcotics that she had transported in her carry-on luggage.

470.    On or about April 24, 2014, before and after the flight to Hawaii, defendant LUCKETT communicated with defendants CROSS, McFIELD, HOLLOWAY, and co-conspirators known to the

grand jury, via telephone to coordinate the smuggling of narcotics through the airport.

471.    On or about April 24, 2014, the co-conspirator known to the grand jury flew back to Northern California from Maui.

April 28, 2014

472.    On or about April 27, 2014, defendant LUCKETT and/or a co-conspirator known to the grand jury used a credit or debit card ending in X-1690 in the name of the co-conspirator known to the grand jury to purchase a ticket for a different co-conspirator known to the grand jury to fly on Hawaiian Airlines from Oakland to Honolulu on April 28, 2014, with a return flight from Honolulu to Oakland on April 29, 2014.

473.    On or about April 28, 2014, defendant HOLLOWAY reserved a ticket for defendant McFIELD to fly on Southwest Airlines from Oakland to Los Angeles on April 28, 2014, but the ticket was not used.

474.    On or about April 28, 2014, LUCKETT and/or a co-conspirator known to the grand jury used a credit or debit card ending in X-1690 in the name of a co-conspirator known to the grand jury to purchase a ticket for defendant McFIELD to fly on Southwest Airlines from Oakland to Los Angeles on April 28, 2014.

475.    On or about April 28, 2014, defendant LUCKETT met with CROSS outside the airport in the morning and LUCKETT gave CROSS a package containing methamphetamine and cocaine.

476.    On or about April 28, 2014, defendant CROSS brought the package containing methamphetamine and cocaine that he had received from LUCKETT into the Oakland Airport AOA via an employee entrance and did not pass through a TSA security screening checkpoint.

477.    On or about April 28, 2014, defendant CROSS, while in possession of the package containing methamphetamine and cocaine, traveled from the AOA to the Passenger Terminal using his Port of Oakland-issued access code.

478.    On or about April 28, 2014, defendant CROSS met McFIELD, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided McFIELD with the package containing methamphetamine and cocaine.

479.    On or about April 28, 2014, defendant CROSS traveled from the Passenger Terminal to the AOA using his Port of Oakland-issued security badge.

480.    On or about April 28, 2014, defendant McFIELD met with the co-conspirator known to the grand jury with the reservation to fly to Hawaii, who had already passed through the TSA security screening checkpoint, inside the Passenger Terminal and provided her with the package containing methamphetamine and cocaine which she then placed in her carry-on luggage.

481.    On or about April 28, 2014, the co-conspirator known to the grand jury attempted to board an outbound Hawaiian Airlines aircraft with baggage that had not been submitted to inspection and screening and which contained methamphetamine and cocaine.

482.    On or about April 28, 2014, defendant McFIELD did not board his flight to Los Angeles and instead left the airport.

483.    On or about April 28, 2014, the co-conspirator known to the grand jury was prevented from flying by airline personnel and left the airport.

All in violation of Title 18, United States Code, Section 371.


COUNT TWO:          (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of Security Requirements)

On or about August 18, 2011, in the Northern District of California, the defendants,

JEREMY JAMES LUCKETT,
a/k/a "J-Luck,"
CHRISTOPHER MICHAEL CROSS, and
KATRICE MARY ELLEN DAY,

did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement that all individuals who board an aircraft must submit their person and accessible property to inspection and screening, with the intent to evade such security procedures and restrictions, and with the intent to commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in violation of Title 49, United States Code, Sections 46314(a), (b)(2).

COUNT THREE:   (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of Security Requirements)

On or about December 7, 2011, in the Northern District of California, the defendants,

JEREMY JAMES LUCKETT,
a/k/a "J-Luck,"
DAMIEN ZACKERY LEWIS,
a/k/a Damien Zachary Lewis,
a/k/a Damien Zackery Lewis,
a/k/a "D-Lew,"
a/k/a "damacktastic1,"
a/k/a "Mack Frugul,"
CHRISTOPHER MICHAEL CROSS, and
KATRICE MARY ELLEN DAY,

did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement that all individuals who board an aircraft must submit their person and accessible property to inspection and screening, with the intent to evade such security procedures and restrictions, and with the intent to commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in violation of Title 49, United States Code, Sections 46314(a), (b)(2).

COUNT FOUR:   (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of Security Requirements)

On or about January 4, 2012, in the Northern District of California, the defendants,

JEREMY JAMES LUCKETT,
a/k/a "J-Luck,"
DAMIEN ZACKERY LEWIS,
a/k/a Damien Zachary Lewis,
a/k/a Damien Zackery Lewis,
a/k/a "D-Lew,"
a/k/a "damacktastic1,"
a/k/a "Mack Frugul,"
CHRISTOPHER MICHAEL CROSS, and
KATRICE MARY ELLEN DAY,

did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

1  that all individuals who board an aircraft must submit their person and accessible property to inspection

2  and screening, with the intent to evade such security procedures and restrictions, and with the intent to

3  commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

4  with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

5  violation of Title 49, United States Code, Sections 46314(a), (b)(2).

6

7  COUNT FIVE:          (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of Security
                        Requirements)

8

9         On or about February 23, 2012, in the Northern District of California, the defendants,

10                             JEREMY JAMES LUCKETT,
                                   a/k/a "J-Luck,"
11                            DAMIEN ZACKERY LEWIS,
                              a/k/a Damien Zachary Lewis,
12                            a/k/a Damien Zackery Lewis,
                                   a/k/a "D-Lew,"
13                             a/k/a "damacktastic1,"
                                a/k/a "Mack Frugul,"
14                     CHRISTOPHER MICHAEL CROSS, and
                            KATRICE MARY ELLEN DAY,

15

16  did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

17  requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

18  that all individuals who board an aircraft must submit their person and accessible property to inspection

19  and screening, with the intent to evade such security procedures and restrictions, and with the intent to

20  commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

21  with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

22  violation of Title 49, United States Code, Sections 46314(a), (b)(2).

23  ///

24  ///

25  ///

26

27

28

SUPERSEDING INDICTMENT                    58

1  COUNT SIX:          (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of Security
                       Requirements)
2

3       On or about March 9, 2012, in the Northern District of California, the defendants,

4                               JEREMY JAMES LUCKETT,
                                   a/k/a "J-Luck,"
5                             DAMIEN ZACKERY LEWIS,
                              a/k/a Damien Zachary Lewis,
6                             a/k/a Damien Zackery Lewis,
                                   a/k/a "D-Lew,"
7                               a/k/a "damacktastic1,"
                                  a/k/a "Mack Frugul,"
8                        CHRISTOPHER MICHAEL CROSS, and
                            KATRICE MARY ELLEN DAY,
9

10  did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

11  requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

12  that all individuals who board an aircraft must submit their person and accessible property to inspection

13  and screening, with the intent to evade such security procedures and restrictions, and with the intent to

14  commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

15  with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

16  violation of Title 49, United States Code, Sections 46314(a), (b)(2).

17

18  COUNT SEVEN:        (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of Security
                       Requirements)
19

20       On or about June 8, 2012, in the Northern District of California, the defendants,

21                              JEREMY JAMES LUCKETT,
                                  a/k/a "J-Luck," and
22                        CHRISTOPHER MICHAEL CROSS,

23  did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

24  requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

25  that all individuals who board an aircraft must submit their person and accessible property to inspection

26  and screening, with the intent to evade such security procedures and restrictions, and with the intent to

27  commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

28  with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

SUPERSEDING INDICTMENT                    59

1 | violation of Title 49, United States Code, Sections 46314(a), (b)(2).

2

3 | COUNT EIGHT:          (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of Security
4 |                                 Requirements)

5 |          On or about August 22, 2012, in the Northern District of California, the defendants,

6 |                                        JEREMY JAMES LUCKETT,
                                            a/k/a "J-Luck,"
7 |                              CHRISTOPHER MICHAEL CROSS, and,
                                       ANTHONY JEROME TURNER,
8

9 | did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

10 | requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

11 | that all individuals who board an aircraft must submit their person and accessible property to inspection

12 | and screening, with the intent to evade such security procedures and restrictions, and with the intent to

13 | commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

14 | with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

15 | violation of Title 49, United States Code, Sections 46314(a), (b)(2).

16

17 | COUNT NINE:           (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of Security
18 |                                 Requirements)

19 |          On or about January 24, 2013, in the Northern District of California, the defendants,

20 |                                        JEREMY JAMES LUCKETT,
                                            a/k/a "J-Luck,"
21 |                              CHRISTOPHER MICHAEL CROSS, and
                                     KATRICE MARY ELLEN DAY,
22

23 | did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

24 | requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

25 | that all individuals who board an aircraft must submit their person and accessible property to inspection

26 | and screening, with the intent to evade such security procedures and restrictions, and with the intent to

27 | commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

28 | with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

SUPERSEDING INDICTMENT                          60

1    violation of Title 49, United States Code, Sections 46314(a), (b)(2).

2

3    COUNT TEN:          (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of Security
                         Requirements)
4

5         On or about April 4, 2013, in the Northern District of California, the defendants,

6                                   JEREMY JAMES LUCKETT,
                                         a/k/a "J-Luck," and
7                                 CHRISTOPHER MICHAEL CROSS,

8    did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

9    requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

10   that all individuals who board an aircraft must submit their person and accessible property to inspection

11   and screening, with the intent to evade such security procedures and restrictions, and with the intent to

12   commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

13   with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

14   violation of Title 49, United States Code, Sections 46314(a), (b)(2).

15

16   COUNT ELEVEN:       (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of Security
                         Requirements)
17

18        On or about May 8, 2013, in the Northern District of California, the defendants,

19                                  JEREMY JAMES LUCKETT,
                                         a/k/a "J-Luck,"
20                             CHRISTOPHER MICHAEL CROSS, and,
                                   ANTHONY JEROME TURNER,
21

22   did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

23   requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

24   that all individuals who board an aircraft must submit their person and accessible property to inspection

25   and screening, with the intent to evade such security procedures and restrictions, and with the intent to

26   commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

27   with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

28   violation of Title 49, United States Code, Sections 46314(a), (b)(2).

SUPERSEDING INDICTMENT                   61

1  COUNT TWELVE:          (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of
                          Security Requirements)
2

3      On or about May 9, 2013, in the Northern District of California, the defendants,

4                         JEREMY JAMES LUCKETT,
                              a/k/a "J-Luck,"
5                     CHRISTOPHER MICHAEL CROSS, and
                       KATRICE MARY ELLEN DAY,
6

7  did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

8  requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

9  that all individuals who board an aircraft must submit their person and accessible property to inspection

10 and screening, with the intent to evade such security procedures and restrictions, and with the intent to

11 commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

12 with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

13 violation of Title 49, United States Code, Sections 46314(a), (b)(2).

14

15 COUNT THIRTEEN:        (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of
                          Security Requirements)
16

17     On or about June 13, 2013, in the Northern District of California, the defendants,

18                        JEREMY JAMES LUCKETT,
                              a/k/a "J-Luck,"
19                    CHRISTOPHER MICHAEL CROSS, and,
                       ANTHONY JEROME TURNER,
20

21 did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

22 requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

23 that all individuals who board an aircraft must submit their person and accessible property to inspection

24 and screening, with the intent to evade such security procedures and restrictions, and with the intent to

25 commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

26 with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

27 violation of Title 49, United States Code, Sections 46314(a), (b)(2).

28

1   COUNT FOURTEEN:          (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of
                             Security Requirements)
2

3        On or about July 11, 2013, in the Northern District of California, the defendants,

4                                   JEREMY JAMES LUCKETT,
                                      a/k/a "J-Luck," and
5                                 CHRISTOPHER MICHAEL CROSS,

6   did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

7   requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

8   that all individuals who board an aircraft must submit their person and accessible property to inspection

9   and screening, with the intent to evade such security procedures and restrictions, and with the intent to

10  commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

11  with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

12  violation of Title 49, United States Code, Sections 46314(a), (b)(2).

13

14  COUNT FIFTEEN:          (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of Security
                            Requirements)
15
         On or about July 11, 2013, in the Northern District of California, the defendants,
16
                                    JEREMY JAMES LUCKETT,
17                                    a/k/a "J-Luck," and
                                  CHRISTOPHER MICHAEL CROSS,
18

19  did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

20  requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

21  that all individuals who board an aircraft must submit their person and accessible property to inspection

22  and screening, with the intent to evade such security procedures and restrictions, and with the intent to

23  commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

24  with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

25  violation of Title 49, United States Code, Sections 46314(a), (b)(2).

26

27

28

SUPERSEDING INDICTMENT                          63

1  COUNT SIXTEEN:          (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of
                           Security Requirements)
2

3       On or about July 25, 2013, in the Northern District of California, the defendants,

4                            JEREMY JAMES LUCKETT,
                                a/k/a "J-Luck,"
5                          CHRISTOPHER MICHAEL CROSS,
                           ANTHONY JEROME TURNER, and
6                            SHANTELL LATRICE DANIELS,

7  did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

8  requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

9  that all individuals who board an aircraft must submit their person and accessible property to inspection

10  and screening, with the intent to evade such security procedures and restrictions, and with the intent to

11  commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

12  with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

13  violation of Title 49, United States Code, Sections 46314(a), (b)(2).

14

15  COUNT SEVENTEEN:        (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of
                           Security Requirements)
16

17      On or about July 31, 2013, in the Northern District of California, the defendants,

18                           JEREMY JAMES LUCKETT,
                                a/k/a "J-Luck,"
19                        CHRISTOPHER MICHAEL CROSS, and,
                           ANTHONY JEROME TURNER,
20

21  did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

22  requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

23  that all individuals who board an aircraft must submit their person and accessible property to inspection

24  and screening, with the intent to evade such security procedures and restrictions, and with the intent to

25  commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

26  with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

27  violation of Title 49, United States Code, Sections 46314(a), (b)(2).

28

SUPERSEDING INDICTMENT                    64

1  COUNT EIGHTEEN:          (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of
                            Security Requirements)

2

3      On or about September 9, 2013, in the Northern District of California, the defendants,

4                               JEREMY JAMES LUCKETT,
                                     a/k/a "J-Luck,"
5                            CHRISTOPHER MICHAEL CROSS,
                             ANTHONY JEROME TURNER, and
6                              LAURA ELAINE TURNER,

7  did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

8  requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

9  that all individuals who board an aircraft must submit their person and accessible property to inspection

10  and screening, with the intent to evade such security procedures and restrictions, and with the intent to

11  commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

12  with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

13  violation of Title 49, United States Code, Sections 46314(a), (b)(2).

14

15  COUNT NINETEEN:          (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of
                             Security Requirements)

16

17      On or about September 12, 2013, in the Northern District of California, the defendants,

18                               JEREMY JAMES LUCKETT,
                                     a/k/a "J-Luck," and
19                           CHRISTOPHER MICHAEL CROSS,

20  did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

21  requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

22  that all individuals who board an aircraft must submit their person and accessible property to inspection

23  and screening, with the intent to evade such security procedures and restrictions, and with the intent to

24  commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

25  with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

26  violation of Title 49, United States Code, Sections 46314(a), (b)(2).

27

28

SUPERSEDING INDICTMENT                    65

1   COUNT TWENTY:      (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of
2                                     Security Requirements)

3         On or about October 9, 2013, in the Northern District of California, the defendants,

4                          JEREMY JAMES LUCKETT,
                             a/k/a "J-Luck," and
5                     CHRISTOPHER MICHAEL CROSS,

6   did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

7   requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

8   that all individuals who board an aircraft must submit their person and accessible property to inspection

9   and screening, with the intent to evade such security procedures and restrictions, and with the intent to

10   commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

11   with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

12   violation of Title 49, United States Code, Sections 46314(a), (b)(2).

13

14   COUNT TWENTY-ONE:    (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of
15                                       Security Requirements)

16         On or about November 18, 2013, in the Northern District of California, the defendants,

17                          JEREMY JAMES LUCKETT,
                             a/k/a "J-Luck," and
18                     CHRISTOPHER MICHAEL CROSS,

19   did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

20   requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

21   that all individuals who board an aircraft must submit their person and accessible property to inspection

22   and screening, with the intent to evade such security procedures and restrictions, and with the intent to

23   commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

24   with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

25   violation of Title 49, United States Code, Sections 46314(a), (b)(2).

26

27

28

COUNT TWENTY-TWO:        (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of Security Requirements)

On or about December 2, 2013, in the Northern District of California, the defendants,

JEREMY JAMES LUCKETT,
a/k/a "J-Luck,"
DAMIEN ZACKERY LEWIS,
a/k/a Damien Zachary Lewis,
a/k/a Damien Zackery Lewis,
a/k/a "D-Lew,"
a/k/a "damacktastic1,"
a/k/a "Mack Frugul," and
CHRISTOPHER MICHAEL CROSS,

did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement that all individuals who board an aircraft must submit their person and accessible property to inspection and screening, with the intent to evade such security procedures and restrictions, and with the intent to commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in violation of Title 49, United States Code, Sections 46314(a), (b)(2).

COUNT TWENTY-THREE:     (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of Security Requirements)

On or about December 5, 2013, in the Northern District of California, the defendants,

JEREMY JAMES LUCKETT,
a/k/a "J-Luck,"
DAMIEN ZACKERY LEWIS,
a/k/a Damien Zachary Lewis,
a/k/a Damien Zackery Lewis,
a/k/a "D-Lew,"
a/k/a "damacktastic1,"
a/k/a "Mack Frugul," and
CHRISTOPHER MICHAEL CROSS,

did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement that all individuals who board an aircraft must submit their person and accessible property to inspection and screening, with the intent to evade such security procedures and restrictions, and with the intent to

SUPERSEDING INDICTMENT       67

1  commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

2  with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

3  violation of Title 49, United States Code, Sections 46314(a), (b)(2).

4

5  <u>COUNT TWENTY-FOUR:</u>   (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of
                            Security Requirements)

6

7     On or about January 8, 2014, in the Northern District of California, the defendants,

8                          JEREMY JAMES LUCKETT,
                              a/k/a "J-Luck,"
9                    CHRISTOPHER MICHAEL CROSS, and
                        ANTHONY JEROME TURNER,
10

11 did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

12 requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

13 that all individuals who board an aircraft must submit their person and accessible property to inspection

14 and screening, with the intent to evade such security procedures and restrictions, and with the intent to

15 commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

16 with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

17 violation of Title 49, United States Code, Sections 46314(a), (b)(2).

18

19 <u>COUNT TWENTY-FIVE:</u>   (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of
                            Security Requirements)

20

21    On or about January 23, 2014, in the Northern District of California, the defendants,

22                         JEREMY JAMES LUCKETT,
                              a/k/a "J-Luck,"
23                       DAMIEN ZACKERY LEWIS,
                        a/k/a Damien Zachary Lewis,
24                      a/k/a Damien Zackery Lewis,
                              a/k/a "D-Lew,"
25                        a/k/a "damacktastic1,"
                            a/k/a "Mack Frugul,"
26                   CHRISTOPHER MICHAEL CROSS,

27 did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

28 requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

1  that all individuals who board an aircraft must submit their person and accessible property to inspection

2  and screening, with the intent to evade such security procedures and restrictions, and with the intent to

3  commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

4  with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

5  violation of Title 49, United States Code, Sections 46314(a), (b)(2).

6

7  COUNT TWENTY-SIX:          (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in
                                        Violation of Security Requirements)
8

9      On or about January 30, 2014, in the Northern District of California, the defendants,

10                         JEREMY JAMES LUCKETT,
                              a/k/a "J-Luck,"
11                       DAMIEN ZACKERY LEWIS,
                           a/k/a Damien Zachary Lewis,
12                         a/k/a Damien Zackery Lewis,
                              a/k/a "D-Lew,"
13                         a/k/a "damacktastic1,"
                           a/k/a "Mack Frugul,"
14                    CHRISTOPHER MICHAEL CROSS,

15  did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

16  requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

17  that all individuals who board an aircraft must submit their person and accessible property to inspection

18  and screening, with the intent to evade such security procedures and restrictions, and with the intent to

19  commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

20  with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

21  violation of Title 49, United States Code, Sections 46314(a), (b)(2).

22

23  COUNT TWENTY-SEVEN:        (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in
                                        Violation of Security Requirements)
24

25      On or about February 6, 2014, in the Northern District of California, the defendants,

26                         JEREMY JAMES LUCKETT,
                              a/k/a "J-Luck,"
27                    CHRISTOPHER MICHAEL CROSS, and
                       ANTHONY JEROME TURNER,
28

SUPERSEDING INDICTMENT                    69

1    did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

2    requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

3    that all individuals who board an aircraft must submit their person and accessible property to inspection

4    and screening, with the intent to evade such security procedures and restrictions, and with the intent to

5    commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

6    with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

7    violation of Title 49, United States Code, Sections 46314(a), (b)(2).

8

9    COUNT TWENTY-EIGHT:  (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of
                                Security Requirements)

10

11          On or about March 3, 2014, in the Northern District of California, the defendants,

12                              JEREMY JAMES LUCKETT,
                                      a/k/a "J-Luck,"
13                              DAMIEN ZACKERY LEWIS,
                                a/k/a Damien Zachary Lewis,
14                              a/k/a Damien Zackery Lewis,
                                      a/k/a "D-Lew,"
15                                 a/k/a "damacktastic1,"
                                 a/k/a "Mack Frugal," and
16                              CHRISTOPHER MICHAEL CROSS,

17    did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

18    requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

19    that all individuals who board an aircraft must submit their person and accessible property to inspection

20    and screening, with the intent to evade such security procedures and restrictions, and with the intent to

21    commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

22    with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

23    violation of Title 49, United States Code, Sections 46314(a), (b)(2).

24    ///

25    ///

26    ///

27

28

SUPERSEDING INDICTMENT                        70

COUNT TWENTY-NINE:    (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of Security Requirements)

On or about March 20, 2014, in the Northern District of California, the defendants,

JEREMY JAMES LUCKETT,
a/k/a "J-Luck,"
DAMIEN ZACKERY LEWIS,
a/k/a Damien Zachary Lewis,
a/k/a Damien Zackery Lewis,
a/k/a "D-Lew,"
a/k/a "damacktastic1,"
a/k/a "Mack Frugul," and
CHRISTOPHER MICHAEL CROSS,

did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement that all individuals who board an aircraft must submit their person and accessible property to inspection and screening, with the intent to evade such security procedures and restrictions, and with the intent to commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in violation of Title 49, United States Code, Sections 46314(a), (b)(2).

COUNT THIRTY:          (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of Security Requirements)

On or about March 24, 2014, in the Northern District of California, the defendants,

JEREMY JAMES LUCKETT,
a/k/a "J-Luck,"
CHRISTOPHER MICHAEL CROSS,
ANTHONY JEROME TURNER, and
LAURA ELAINE TURNER,

did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement that all individuals who board an aircraft must submit their person and accessible property to inspection and screening, with the intent to evade such security procedures and restrictions, and with the intent to commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

1  violation of Title 49, United States Code, Sections 46314(a), (b)(2).

2

3  <u>COUNT THIRTY-ONE:</u>        (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of
4                                 Security Requirements)

5        On or about March 26, 2014, in the Northern District of California, the defendants,

6                              JEREMY JAMES LUCKETT,
                                      a/k/a "J-Luck,"
7                          CHRISTOPHER MICHAEL CROSS, and
                              ANTHONY JEROME TURNER,
8

9  did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

10 requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

11 that all individuals who board an aircraft must submit their person and accessible property to inspection

12 and screening, with the intent to evade such security procedures and restrictions, and with the intent to

13 commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

14 with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

15 violation of Title 49, United States Code, Sections 46314(a), (b)(2).

16

17 <u>COUNT THIRTY-TWO:</u>        (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of
18                                 Security Requirements)

19       On or about April 10, 2014, in the Northern District of California, the defendants,

20                             JEREMY JAMES LUCKETT,
                                      a/k/a "J-Luck,"
21                         CHRISTOPHER MICHAEL CROSS, and
                              ANTHONY JEROME TURNER,
22

23 did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

24 requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

25 that all individuals who board an aircraft must submit their person and accessible property to inspection

26 and screening, with the intent to evade such security procedures and restrictions, and with the intent to

27 commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

28 with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

SUPERSEDING INDICTMENT                 72

1   violation of Title 49, United States Code, Sections 46314(a), (b)(2).

2

3   <u>COUNT THIRTY-THREE:</u>     (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of
                                     Security Requirements)

4

5        On or about April 24, 2014, in the Northern District of California, the defendants,

6                                    JEREMY JAMES LUCKETT,
                                        a/k/a "J-Luck,"
7                                   CHRISTOPHER MICHAEL CROSS,
                                     JA'DEL RAYNARD McFIELD, and
8                                   BRIANNA NICOLE HOLLOWAY,

9   did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

10  requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

11  that all individuals who board an aircraft must submit their person and accessible property to inspection

12  and screening, with the intent to evade such security procedures and restrictions, and with the intent to

13  commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

14  with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

15  violation of Title 49, United States Code, Sections 46314(a), (b)(2).

16

17  <u>COUNT THIRTY-FOUR:</u>      (49 U.S.C. §§ 46314(a), (b)(2) – Entering an Airport Area in Violation of
                                     Security Requirements)

18

19       On or about April 28, 2014, in the Northern District of California, the defendants,

20                                   JEREMY JAMES LUCKETT,
                                        a/k/a "J-Luck,"
21                                   DAMIEN ZACKERY LEWIS,
                                   a/k/a Damien Zachary Lewis,
22                                 a/k/a Damien Zackery Lewis,
                                        a/k/a "D-Lew,"
23                                  a/k/a "damacktastic1,"
                                     a/k/a "Mack Frugul,"
24                              CHRISTOPHER MICHAEL CROSS, and
                                     JA'DEL RAYNARD McFIELD,

25

26  did knowingly and willfully enter an airport area that serviced an air carrier, in violation of security

27  requirements proscribed under Title 49, United States Code, Section 44901(a), that is, the requirement

28  that all individuals who board an aircraft must submit their person and accessible property to inspection

SUPERSEDING INDICTMENT                          73

1 | and screening, with the intent to evade such security procedures and restrictions, and with the intent to

2 | commit, in the aircraft and airport area, a felony under the law of the United States, namely, possession

3 | with intent to distribute a controlled substance and conspiracy to distribute a controlled substance, all in

4 | violation of Title 49, United States Code, Sections 46314(a), (b)(2).

5

6 | COUNT THIRTY-FIVE:    (21 U.S.C. §§ 846 and 841(b)(1)(A)(viii), (b)(1)(B)(ii)  – Conspiracy to
                                          Distribute, and to Possess with Intent to Distribute, Methamphetamine and
7 |                                       Cocaine)

8 |        Beginning on a date unknown, and continuing until at least April 24, 2014, in the Northern

9 | District of California, and elsewhere, the defendants,

10 |                              JEREMY JAMES LUCKETT,
                                        a/k/a "J-Luck,"
11 |                             DAMIEN ZACKERY LEWIS,
                                   a/k/a Damien Zachary Lewis,
12 |                                 a/k/a Damien Zackery Lewis,
                                        a/k/a "D-Lew,"
13 |                                   a/k/a "damacktastic1,"
                                        a/k/a "Mack Frugul,"
14 |                          CHRISTOPHER MICHAEL CROSS, and
                                   JA'DEL RAYNARD McFIELD,

15

16 | and others known and unknown to the Grand Jury, did knowingly and intentionally conspire to distribute

17 | and possess with intent to distribute Schedule II controlled substances, to wit:  50 grams and more of

18 | methamphetamine, its salts, isomers, and salts of its isomers, in violation of Title 21, United States

19 | Code, Sections 846 and 841(b)(1)(A)(viii); and 500 grams or more of a mixture and substance

20 | containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of its

21 | isomers, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(ii).

22 | ///

23 | ///

24 | ///

25

26

27

28

SUPERSEDING INDICTMENT                    74

1  <u>COUNT THIRTY-SIX:</u>       (21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) – Possession With Intent to
                                  Distribute, and Distribution of, Methamphetamine)
2

3       On or about April 28, 2014, in the Northern District of California, the defendants,

4                           JEREMY JAMES LUCKETT,
                                 a/k/a "J-Luck,"
5                          DAMIEN ZACKERY LEWIS,
                            a/k/a Damien Zachary Lewis,
6                           a/k/a Damien Zackery Lewis,
                                 a/k/a "D-Lew,"
7                             a/k/a "damacktastic1,"
                               a/k/a "Mack Frugul,"
8                      CHRISTOPHER MICHAEL CROSS, and
                          JA'DEL RAYNARD McFIELD,
9

10 did knowingly and intentionally distribute, and possess with intent to distribute, a Schedule II controlled

11 substance, namely, 50 grams and more of methamphetamine, its salts, isomers, and salts of its isomers,

12 in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii).

13

14 <u>COUNT THIRTY-SEVEN:</u>    (21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii) – Possession With Intent to
                                  Distribute, and Distribution of, Cocaine)
15

16      On or about April 28, 2014, in the Northern District of California, the defendants,

17                          JEREMY JAMES LUCKETT,
                                 a/k/a "J-Luck,"
18                         DAMIEN ZACKERY LEWIS,
                            a/k/a Damien Zachary Lewis,
19                          a/k/a Damien Zackery Lewis,
                                 a/k/a "D-Lew,"
20                            a/k/a "damacktastic1,"
                               a/k/a "Mack Frugul,"
21                     CHRISTOPHER MICHAEL CROSS, and
                          JA'DEL RAYNARD McFIELD,
22

23 did knowingly and intentionally distribute, and possess with intent to distribute, a Schedule II controlled

24 substance, namely, 500 grams and more of a mixture and substance containing a detectable amount of

25 cocaine, its salts, optical and geometric isomers, and salts of its isomers, in violation of Title 21, United

26 States Code, Sections 841(a)(1) and (b)(1)(B)(ii).

27

28

SUPERSEDING INDICTMENT                    75

COUNT THIRTY-EIGHT:     (18 U.S.C. § 1956(a)(1)(A)(i) – Money Laundering with Intent to Promote Drug Trafficking)

On or about April 23, 2014, in the Northern District of California, the defendant,

JEREMY JAMES LUCKETT,
a/k/a "J-Luck,"

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, namely, the deposit of $1,998.00 onto a reloadable credit or debit card ending in X-1690, which involved the proceeds of a specified unlawful activity, namely, drug trafficking, with the intent to promote the carrying on of that specified unlawful activity through the purchase of airfare and hotel rooms, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

FORFEITURE ALLEGATION:     (21 U.S.C. § 853 – Drug Forfeiture)

1.     The factual allegations contained in Counts Thirty-Five, Thirty-Six, and Thirty-Seven of this Superseding Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of 21 U.S.C. §§ 853(a)(1) and (2).

2.     Upon a conviction of the offenses alleged in Counts Thirty-Five, Thirty-Six, and Thirty-Seven of this Superseding Indictment, the defendants,

JEREMY JAMES LUCKETT,
a/k/a "J-Luck,"
DAMIEN ZACKERY LEWIS,
a/k/a Damien Zachary Lewis,
a/k/a Damien Zackery Lewis,
a/k/a "D-Lew,"
a/k/a "damacktastic1,"
a/k/a "Mack Frugul,"
CHRISTOPHER MICHAEL CROSS, and
JA'DEL RAYNARD McFIELD,

shall forfeit to the United States all right, title and interest in any property constituting and derived from any proceeds defendant obtained, directly or indirectly, as a result of said violation, and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of said violation.

3.      Upon conviction of the offense alleged in Count Thirty-Eight, the defendant

JEREMY JAMES LUCKETT,
a/k/a "J-Luck,"

shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to a money judgment.

4.      If, as a result of any act or omission of the defendants, any of said property

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to or deposited with, a third person;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty;

any and all interest defendant has in any other property (not to exceed the value of the above forfeitable property) shall be vested in the United States and forfeited to the United States.

All in violation of Title 21, United States Code, Sections 853(a)(1), (a)(2), (p), as incorporated by Title 18, United States Code, Section 982(b)(1), Title 28, United States Code, Section 2461(c) and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED: August  11 , 2016                    A TRUE BILL.

FOREPERSON

BRIAN J. STRETCH
United States Attorney

PHILIP A. GUENTERT
Acting Chief, Criminal Division

(Approved as to form:  _____ )
GARTH HIRE
Assistant United States Attorney